## (September 11, 1978)

■ IRENE RAPP et al., Respondents-Appellants, v DIME SAVINGS BANK OF NEW YORK, Appellant-Respondent.—In an action, *inter alia,* to declare that the defendant bank's time restrictions on when the proceeds of a deposit consisting of checks are available to the depositor for withdrawal are illegal, the parties cross-appeal from an order of the Supreme Court, Kings County, dated January 19, 1978, which, *inter alia,* (1) granted defendant's cross motion for summary judgment to the extent of dismissing the fifth through eighth causes of action and denied the cross motion as to the first through fourth causes of action, and (2) granted the plaintiffs' motion for class action status pursuant to CPLR 902 as to the first four causes of action. The appeals bring up for review so much of an order of the same court, dated March 2, 1978, as, upon reargument, adhered to the original determination. Appeal from the order dated January 19, 1978 dismissed, as academic. That order was superseded by the order made upon reargument. Order dated March 2, 1978 modified, on the law, by adding thereto, immediately after the provision adhering to the original determination, the following: "except that (1) plaintiffs' motion for class action status is denied, (2) defendant's cross motion for summary judgment is granted as to the first through fourth causes of action and (3) it is declared that the subject time restrictions imposed by defendant on checking account withdrawals (viz., 6 business days from the deposit of local checks and 15 business days from the deposit of all other checks) are not illegal." As so modified, order affirmed insofar as reviewed. Defendant is awarded one bill of $50 costs and disbursements. The plaintiffs maintain savings and checking accounts with the defendant, the Dime Savings Bank of New York (hereinafter the Dime). Like most other banks, the Dime has imposed certain time restrictions on when withdrawals may be made against deposits into a patron's checking account. These restrictions essentially provide that the proceeds of a deposit consisting of checks are not available to the depositor for (1) 6 business days for local checks and (2) 15 business days for nonlocal checks. The plaintiffs'

complaint alleges, in eight separate causes of action, that the imposition of these time restrictions violates various statutes and common-law doctrines. It is emphasized that it is not alleged that the proceeds of any particular deposit were ever unreasonably withheld from the plaintiffs. On the contrary, the record unequivocally shows that the proceeds of deposits have always been immediately available to the plaintiffs. This resulted from the Dime's policy of allowing immediate withdrawal when: (1) the deposited check does not exceed $50; or (2) the deposited check is equal to or exceeds $50, but the prior checking balance or savings account balance equals or exceeds the amount of the deposited check. If the savings account balance is relied upon, an amount equal to the deposited check is held against withdrawal, but continues to draw interest. Nor is it alleged that time restrictions on the availability of checking account deposits made by check are illegal per se. Rather, the gravamen of the complaint is that the particular time restrictions imposed by the Dime are illegal. Special Term granted the Dime's application for summary judgment dismissing the fifth through eighth causes of action, but denied summary judgment as to the first four causes of action, essentially on the ground that there were questions of fact which required a trial. In addition, Special Term granted the plaintiffs' application for class action certification as to the surviving claims (see CPLR 902). We agree with that part of Special Term's decision which dismissed the fifth through eighth causes of action on the ground that the "plaintiffs failed to submit evidentiary facts substantiating these claims and demonstrating the presence of triable issues of fact *(Indig v Finkelstein,* 23 NY2d 728, 729; *S.J. Capelin Associates, Inc. v Globe Manufacturing Corp.,* 34 NY2d 338, 342)." However, we believe that the Dime should also have been granted summary judgment as to the first through fourth causes of action. This result makes the application for class action certification academic and that part of the order which granted class action status must necessarily be reversed. It is well settled that "A representative action cannot be maintained unless it appears from proper allegations in the complaint that the plaintiff not only has a cause of action, but that he is representative of a common or general interest of others. Unless both facts appear, a demurrer is well taken" *(Bouton v Van Buren,* 229 NY 17, 22). The first and second causes of action basically allege that the Dime's time restrictions are in violation of article 4 of the Uniform Commercial Code. Citing sections 4-204 and 4-213 of the Uniform Commercial Code, Special Term determined that dispositive of the first and second causes of action was the issue of the reasonableness of the time restrictions and that since reasonableness is a question of fact, summary judgment did not lie. However, in the circumstances of this case, the dispositive issue is more properly framed in the context of whether the time restrictions comport with the exercise of ordinary care gauged by general banking usage, as long as such standard is not manifestly unreasonable (see Uniform Commercial Code, § 4-103). From this perspective the record unquestionably shows that the Dime has exercised ordinary care in imposing the subject time restrictions and is, therefore, entitled to summary judgment declaring the legality of the said restrictions (cf. *Boryszewski v Brydges,* 37 NY2d 361). The third and fourth causes of action essentially allege that the Dime engaged in false advertising and fraudulent concealment by advertising that it offered free checking accounts without also advertising its policy of restricting withdrawals for a period of time on deposits made by check. Here, as with the fifth through eighth causes of action, the plaintiffs have failed to set forth an evidentiary showing which raises a triable issue of fact. On the competent evidence

before us, it is plain that the Dime has engaged in neither false advertising nor fraudulent concealment. Therefore, the Dime is also entitled to summary judgment on the third and fourth causes of action. Central to the plaintiffs' complaint is the assertion that the subject time restrictions (6 days on local checks and 15 days on nonlocal checks) are unreasonable. However, it is undisputed that the vast majority of all banks impose some type of time restrictions on when the proceeds of a deposit are available. The basic purpose of such time restrictions is to protect the bank and, indirectly, the bank's depositors, against making payments, via withdrawals, on deposited checks which prove to be uncollectible. Thus, the time restrictions are imposed to give the deposited check time to clear. There is, however, no definite means of determining in advance when a check will clear. Rather, the collecting bank will usually learn that final payment has been made "merely by not learning the opposite within a reasonable time. How much time is 'reasonable' for these purposes will of course depend on the distance the item has to travel and the number of banks through which it must pass * * * and other pertinent facts" (Official Comment, Purpose 10, McKinney's Cons Laws of NY, Book 62½ Part 2, Uniform Commercial Code, § 4-213, p 593). Certainly, the specific time that final payment is made on a particular check will vary. But the complaint here is not that payment was unreasonably delayed on a particular check. Rather, the complaint is directed at the general time restrictions which are designed to best secure the bank against making payments on uncollectible checks. The Dime is a "thrift" institution which is not directly associated with either the Federal Reserve Bank or the New York Clearing House Association. For the most part, these organizations will directly deal only with commercial banks. Since a check may be cleared only through these organizations, it is necessary that the Dime, like most other savings banks, clear its checks through the auspices of a commercial bank. As described by the Dime's fairly detailed papers, the process for the clearance of a local check is as follows: day one, the Dime forwards the check to a commercial bank; days two through five, the commercial bank routes the check; day six, the checks which have not cleared are returned to the Dime. The four-day routing process is beyond the control of the Dime and may involve several different banks. The routing process for nonlocal checks is more complex, typically involving more intermediary banks, and is consequently lengthier. The Dime has substantiated its position by including photostatic copies of local checks which were returned on the sixth business day as uncollectible. Rather than disputing by competent evidence the Dime's persuasive showing of the reasonableness of its time restrictions, the plaintiffs have done little more than urge that the restrictions are too long and, therefore, are not reasonable. However, in the circumstances of this case, such conclusory claims are insufficient to raise a substantial question of fact. Furthermore, Special Term erred by relying upon sections 4-204 and 4-213 of the Uniform Commercial Code for the proposition that the abstract question of reasonableness is dispositive of the case at bar. Neither of those sections is controlling. Subdivision (1) of section 4-204 of the Uniform Commercial Code provides: "A collecting bank must send items by reasonably prompt method taking into consideration any relevant instructions, the nature of the item, the number of such items on hand, and the cost of collection involved and the method generally used by it or others to present such items." That subdivision concerns the presentment of items between banks and "prescribes the general standards applicable to proper sending or forwarding of items" (Official Comment, Purpose 1, McKinney's Cons Laws of NY, Book

62½ Part 2, Uniform Commercial Code, § 4-204, p 557). Other, more specific prescriptions have been promulgated to insure that banking institutions make settlements as quickly as possible: The Dime is subject to these various deadlines, but they are relevant only insofar as they require the Dime to promptly forward checks for clearance. The existence of the 6- to 15-day time restrictions do not bespeak a failure to comply with the applicable regulations. Nor have the plaintiffs made any evidentiary showing which even casts doubt upon the Dime's full compliance with the various regulations governing the timely presentment of items for settlement. More relevant, though not determinative, is section 4-213 of the Uniform Commercial Code which provides, in part: "(4) Subject to any right of the bank to apply the credit to an obligation of the customer, credit given by a bank for an item in an account with its customer becomes available for withdrawal as of right (a) in any case where the bank has received a provisional settlement for the item,—when such settlement becomes final and *the bank has had a reasonable time to learn that the settlement is final".* (Emphasis supplied.) The potential factual issue of whether the 6- to 15-day time restrictions represent a "reasonable time to learn that the settlement is final" has been obviated by operation of section 4-103 of the Uniform Commercial Code, which provides, in pertinent part: "(1) *The effect of the provisions of this Article may be varied by agreement* except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; *but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.* (2) Federal Reserve regulations and operating letters, clearing house rules, and the like, have the effect of agreements under subsection (1), whether or not specifically assented to by all parties interested in items handled. (3) Action or non-action approved by this Article or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, *action or non-action consistent with* clearing house rules and the like or with a *general banking usage not disapproved by this Article, prima facie constitutes the exercise of ordinary care."* (Emphasis supplied.) This section essentially allows the parties to vary any of the provisions of article 4 of the Uniform Commercial Code. As applied to this case, the effect of this section is to functionally define "reasonable time to learn that settlement is final" in terms of the 6- to 15-day time restrictions. Pursuant to section 4-103, the instant time restrictions must be upheld if they have been agreed to and if they are not manifestly unreasonable (see Official Comment, Purpose 2, McKinney's Cons Laws of NY, Book 62½ Part 2, Uniform Commercial Code, § 4-103, pp 519-520). The term "agreement" is given an extremely broad definition in subdivision (3) of section 1-201 of the Uniform Commercial Code, and applies to both direct and indirect agreements. An agreement is merely "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance". In the instant action the applicable agreement concerning time restrictions is evinced by the following "Collection Agreement": "Deposits made in cash, including partial deposits of cash, are available on the date received. The proceeds of a deposit consisting of checks is *not* available on the date received. Checks should not be issued against this deposit until 6 business days clearance time has elapsed for a local check and/or 15 business days on all other checks." (Emphasis in original.) This collection agreement is printed on the

reverse side of each of the Dime's checking account deposit slips, the face of which states: "See Over for Collection Agreement". The collection agreement is also prominently posted in each of its branch offices that offers checking accounts. In addition, the terms of the collection agreement are explained to each patron when a checking account is opened. It is noted that the plaintiffs have not denied being so advised and plaintiff Julius Rapp admitted in a deposition that he was aware of the terms of the collection agreement. The Official Comment to section 4-103 of the Uniform Commercial Code (Purpose 2) specifically recognizes that "Legends on deposit tickets, collection letters and acknowledgments of items, coupled with action by the affected party constituting acceptance, adoption, ratification, estoppel or the like, are agreements if they meet the tests of the definition of 'agreement' " (McKinney's Cons Laws of NY, Book 62½ Part 2, p 520). The above-quoted collection agreement essentially constitutes a term and condition of maintaining a checking account at the Dime. By voluntarily opening a checking account with the Dime, the plaintiffs implicitly agreed to the terms thereof. This agreement was further ratified each time the plaintiffs voluntarily deposited checks into their account. Thus, the 6- to 15-day time restrictions satisfy the requirements of an agreement and effectively pre-empt the more ambiguous language of section 4-213 of the Uniform Commercial Code. The terms of the collection agreement must be upheld unless the plaintiffs can demonstrate that the time restrictions are manifestly unreasonable or otherwise inconsistent with the exercise of ordinary care (see Uniform Commercial Code, § 4-103, subd [1]). However, the plaintiffs have failed to make any evidentiary showing which raises a material question of fact as to whether the 6- to 15-day time restrictions depart from the exercise of ordinary care. As relevant to this case, ordinary care can be measured by the general standards of banking usage (see Uniform Commercial Code, § 4-103, subd [3]). The relationship between "general banking usage" and "ordinary care" is elucidated, in part, in Official Comment, Purpose 4, to section 4-103 of the Uniform Commercial Code, as follows: "Subsection (3) further provides that, absent special instructions, action or non-action consistent with clearing house rules and the like or with a general banking usage not disapproved by the Article, prima facie constitutes the exercise of ordinary care * * * The term 'general banking usage' is not defined but should be taken to mean a general usage common to banks in the area concerned. See Section 1-205(2). Where the adjective 'general' is used, the intention is to require a usage broader than a mere practice between two or three banks but it is not intended to require anything as broad as a country-wide usage. A usage followed generally throughout a state, a substantial portion of a state, a metropolitan area or the like would certainly be sufficient * * * The *prima facie* rule does, however, impose on the party contesting the standards to establish that they are unreasonable, arbitrary or unfair." (McKinney's Cons Laws of NY, Book 62½ Part 2, pp 522-523). In support of their general position that the time restrictions are unreasonable, the plaintiffs have compared the time restrictions imposed by the Dime to corresponding restrictions imposed by various commercial banking institutions. It is generally agreed that commercial banks tend to restrict withdrawals against deposits of local checks to three business days and impose longer time restrictions (generally 5 to 10 days) on deposits of nonlocal checks. However, the practices of commercial banking institutions have little bearing on the reasonable practices of a savings bank "thrift" institution in the conduct of its checking accounts. The more appropriate analogy is to the practices of other savings banks, which, like the Dime, must collect

checks through commercial banks which are members of the New York Clearing House Association or Federal Reserve Bank. As part of its extensive evidentiary record made in support of its cross motion for summary judgment, the Dime introduced a table showing the check clearing policies of other local savings banks which offer free checking. The time restrictions for local checks ranged from 5 to 8 days and the restrictions on nonlocal checks ranged from 8 to 21 days (with an average of 15 days). This comparison with the practices of other New York City savings banks is undisputed and conclusively establishes that the Dime's time restrictions are fully in accord with general banking usage and therefore comport with the exercise of ordinary care. In opposition to defendant's cross motion, the plaintiffs have failed to raise even the spectre of a material issue of fact which would preclude summary judgment. Instead, the record conclusively establishes that the 6- to 15-day time restrictions are a term and condition of maintaining a checking account with the Dime and that such restrictions constitute an agreement within the context of section 4-103 of the Uniform Commercial Code. In addition, the record demonstrates that the time restrictions are reasonable and substantially related to the actual time period in which the Dime may expect to be notified that a check is uncollectible. That other banks may have somewhat shorter time restrictions does not mean that their checks clear any faster. Rather, it means only that those institutions are willing to accept the risk of loss at an earlier date. That the Dime's policies may be somewhat more conservative does not suggest that they are unreasonable. Having voluntarily agreed to such practices, if the plaintiffs now feel that the practices are too restrictive, their remedy is simply to deal with another bank. The third and fourth causes of action complain that the Dime's advertisements of free checking with no minimum balance required, fraudulently conceal the practice of restricting withdrawals on deposits made by checks and are false because a minimum balance is in fact required. The vitality of these allegations is largely dependent upon the resolution of the first and second causes of action. Having determined that the Dime is entitled to summary judgment as to those causes of action, it is also entitled to judgment as to the third and fourth causes of action. In addition, the plaintiffs have failed to submit any evidentiary matter supporting the specific allegations contained in the third and fourth causes of action. Rather, these assertions are patently without merit. The record clearly shows that no charge is imposed for maintaining a checking account at the Dime. Nor is any minimum balance required to keep the checking account active. This is all that the advertising may fairly be claimed as representing. Furthermore, the time restrictions are well posted and are fully explained to the prospective depositor before the checking account is opened. Thus, nothing is concealed. Nor may it be inferred that the Dime prospers from the imposition of the time restrictions, except indirectly by protecting itself against making payments on uncollectible checks. Conversely, the plaintiffs have failed to demonstrate how they have been injured. Indeed, even if money in a savings account is held, that money continues to earn interest. Nor may it be claimed that the depositor has lost the use of his money, because there is in actuality no "money" until there has been final payment. Until there is final payment, the collecting bank has a security interest in any payment it may have made (Uniform Commercial Code, § 4-208). The subject advertising is consistent with that of other banks, each of which imposes some period of restriction on withdrawals. The existence of such restrictions is wholly incidental to whether the checking account is free and, therefore, it must be concluded that the third

and fourth causes of action are of no merit. Accordingly, the defendant is entitled to summary judgment as to the first through fourth causes of action as well as the fifth through eighth causes of action. Martuscello, J. P., Rabin, Gulotta and Hawkins, JJ., concur.