Gridley v Turnbury Vil., LLC (2021 NY Slip Op 03577)





Gridley v Turnbury Vil., LLC


2021 NY Slip Op 03577


Decided on June 9, 2021


Appellate Division, Second Department


Hinds-Radix, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 9, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
SYLVIA O. HINDS-RADIX
VALERIE BRATHWAITE NELSON
ANGELA G. IANNACCI, JJ.


2019-12128
 (Index No. 700027/19)

[*1]David Gridley, etc., appellant,
v
Turnbury Village, LLC, respondent.



APPEAL by the plaintiff, in an action, inter alia, to recover damages for rent overcharges, from an order of the Supreme Court (Allan B. Weiss, J.), entered October 9, 2019, in Queens County. The order, insofar as appealed from, granted the defendant's motion, in effect, for summary judgment dismissing the complaint, and denied, as academic, the plaintiff's motion for class action certification and those branches of the plaintiff's separate motion which were pursuant to CPLR 3211(b) to dismiss the defendant's first, second, third, seventh, eighth, and ninth affirmative defenses.



Newman Ferrara LLP, New York, NY (Lucas A. Ferrara, Jarred I. Kassenoff, and Roger A. Sachar, Jr., of counsel), for appellant.
Rosenberg Calica & Birney LLP, Garden City, NY (Robert M. Calica, Judah Serfaty, and Sharon E. Cook of counsel), for respondent.



HINDS-RADIX, J.


OPINION & ORDER
At issue on this appeal is whether the defendant, Turnbury Village, LLC (hereinafter Turnbury), eliminated all triable issues of fact as to whether it was engaged in a fraudulent scheme to deregulate the plaintiff's apartment in its building. We conclude that it did, and that the plaintiff failed to raise a triable issue of fact in opposition. Therefore, we affirm the order insofar as appealed from.
Turnbury is the owner of a 95-unit residential apartment building located in Jackson Heights. The plaintiff, David Gridley, had been a tenant of an apartment in the subject building since June 2015, pursuant to a written lease.
Turnbury purchased the subject building in 2006, and was granted a so-called J-51 tax abatement in 2008. At that time, the apartments in the building were rent-stabilized or rent-controlled (see Rent Stabilization Law of 1969 [Administrative Code of City of NY § 26-501 et seq.]). In years after it purchased the subject building, Turnbury registered 26 apartments, including the apartment later rented by the plaintiff, with the Department of Housing and Community Renewal (hereinafter DHCR) as exempt from rent stabilization regulation, on the ground that the rent under rent stabilization reached the high-rent, vacancy decontrol amount.
By letter dated January 6, 2016, the DHCR notified Turnbury and approximately 4,000 other property owners that the New York courts had determined that "any apartment that was subject to Rent Stabilization at the date of the receipt of the J-51 benefits must register those units as rent stabilized with the DHCR." Pursuant to that directive, Turnbury registered each of its rent-stabilized apartments with the DHCR, and the plaintiff was offered a rent-stabilized renewal lease on or about February 28, 2016, which he accepted.
In January 2019, the plaintiff commenced the instant action, alleging that Turnbury's [*2]failure to register his apartment as a rent-stabilized apartment with the DHCR in the years prior to 2016 was part of a fraudulent scheme to deregulate the apartment. The plaintiff sought class action certification and alleged that he and other members of his class had suffered damages in the form of rent overcharges. Turnbury filed an answer which contained various affirmative defenses.
After issue was joined, the plaintiff moved for class certification, and separately moved pursuant to CPLR 3211(b) to dismiss Turnbury's affirmative defenses. Thereafter, Turnbury moved, in effect, for summary judgment dismissing the complaint. In support of that motion, a principal of Turnbury submitted an affidavit stating that, since 2016, with the exception of two apartments which were rent-controlled, all apartments in the subject building were registered with the DHCR as rent-stabilized, and their tenants were offered rent-stabilized leases upon the expiration of their leases. Turnbury further noted that the market rent in the neighborhood—and the rent charged to tenants—was generally lower than the vacancy decontrol threshold under rent stabilization.
In opposition, the plaintiff admitted that Turnbury was correct that, had it followed the law, and charged rents permissible for rent-stabilized apartments during the period when the apartments were not registered, "the legal regulated rent would be higher than Plaintiff Gridley's current rent, which is calculated based on market conditions in the Building's neighborhood." However, according to the plaintiff, Turnbury was required to compute his rent pursuant to the "default formula" codified in Rent Stabilization Code (9 NYCRR 2520.1 et seq.) 9 NYCRR 2522.6(b)(2). 9 NYCRR 2522.6(b) provides, in pertinent part, that if "the base date rent is the product of a fraudulent scheme to deregulate the apartment . . . the rent shall be established at the lowest of the following amounts set forth in paragraph (3) of this subdivision" (id. § 2522.6[b][2][iii]), which include " the lowest rent registered pursuant to section 2528.3 of this Title for a comparable apartment in the building in effect on the date the complaining tenant first occupied the apartment" (id. § 2522.6[b][3][i]).
In an order entered October 9, 2019, the Supreme Court granted Turnbury's motion, in effect, for summary judgment dismissing the complaint. The court determined that the plaintiff was never charged more than the legal regulated rent that would have been charged if the rent stabilization regulations had been complied with, and Turnbury never engaged in a fraudulent scheme to deregulate the apartment. The court denied, as academic, the plaintiff's motion for class action certification. The court also denied, as academic, those branches of the plaintiff's separate motion which were pursuant to CPLR 3211(b) to dismiss Turnbury's first, second, third, seventh, eighth, and ninth affirmative defenses, alleging, inter alia, that the plaintiff failed to state a claim upon which relief could be granted because the claim was barred by the Rent Stabilization Code, Turnbury had registered all of the subject apartments with the DHCR, DHCR regulations and directives were complied with, and the action was at least in part time-barred since, absent fraud, there is no authority to go beyond the four-year period provided in CPLR former 213-a. The plaintiff appeals.
Real Property Tax Law § 489 authorizes municipalities to grant tax abatements to landlords who make certain improvements of their properties, and further authorized such municipalities to require that such benefits would not be granted to buildings which were not subject to rent regulation (see Real Property Tax Law § 489[7][b]). The City of New York granted Turnbury such abatements, generally referred to as J-51 benefits (see Administrative Code of City of NY § 11-243). However, Housing Preservation and Development Rules and Regulations of City of New York (28 RCNY) § 5-03(f) provided that so long as a building was receiving J-51 benefits, subject to exceptions not applicable here, all dwelling units in the building would be subject to rent regulation. When, in 1993, the legislature provided for luxury decontrol or deregulation of certain rent-stabilized apartments (see L 1993, ch 253), Administrative Code of the City of New York former §§ 26-504.1 and 26-504.2(a) provided that that exclusion from rent stabilization "shall not apply to housing accommodations which became or become subject to this law" by virtue of Real Property Tax Law § 489, to wit, housing accommodations in buildings which receive J-51 benefits.
As observed by the Court of Appeals in Roberts v Tishman Speyer Props., L.P. (13 NY3d 270, 281), the DHCR interpreted these interlocking provisions as precluding deregulation of dwellings receiving J-51 benefits where the receipt of such benefits was the sole reason why the dwelling was subject to rent regulation. That position of the DHCR was incorporated in the New York State Division of Housing and Community Renewal opinion letter of Darryl J. Seavey, Asst. Commr., dated January 16, 1996, and 9 NYCRR former 2520.11(r)(5) and (s)(2). Thus, Turnbury's [*3]initial treatment of the subject apartment as deregulated conformed with the opinion of the DHCR and its interpretation of its regulations.
In October 2009, the Court of Appeals, in Roberts v Tishman Speyer Props., L.P. (13 NY3d at 287), concluded that the interpretation by the DHCR was wrong and contrary to the relevant statutes. However, the Court noted that the issue of retroactivity of its conclusion was "yet to be decided" (id).
In 2011, the Appellate Division, First Department, in Gersten v 56 7th Ave. LLC (88 AD3d 189), held that the ruling by the Court of Appeals should be applied retroactively. The appeal from that determination to the Court of Appeals was withdrawn in 2012 (see Gersten v 56 7th Ave., LLC, 18 NY3d 954). In November 2014, the retroactivity of the Roberts decision was apparently recognized by the Court of Appeals in Borden v 400 E. 55th St. Assoc., L.P. (24 NY3d 382), which ruled that "the class action mechanism" (id. at 389) could be used "to recover compensatory overcharges" (id. at 389-390) resulting from improperly treating apartments as exempt from rent stabilization while accepting J-51 tax benefits. Thereafter, in January 2016, the DHCR, citing the Borden case, notified approximately 4,000 landlords of buildings which received J-51 tax benefits that the New York courts had determined that "any apartment that was subject to Rent Stabilization at the date of the receipt of the J-51 benefits" must be registered as rent-stabilized.
Turnbury registered the plaintiff's apartment and the other apartments in the subject building with the DHCR in 2016 and in subsequent years. The registration of the plaintiff's apartment indicated that he was charged a "preferential rent," which was substantially less than the "legal regulated rent."
Until June 14, 2019, the statute of limitations for any overcharge to tenants whose apartments were improperly decontrolled was governed by Administrative Code of the City of New York former § 26-516(a)(2) and CPLR former 213-a, which prescribed a four-year statute of limitations for examination of rental history to determine legal rent. If there were no reliable rent records within the four-year limitations period or if the building owner had engaged in "a fraudulent scheme to deregulate the apartment" (9 NYCRR 2522.6[b][2][iii]), or engaged in certain practices proscribed by 9 NYCRR 2525.3(b), (c), or (d), the rent would be determined by a "default formula" (Thornton v Baron, 5 NY3d 175, 181; see 9 NYCRR 2522.6[b][3]) representing the lowest of four possible rents, to wit,
"(i) the lowest rent registered pursuant to section 2528.3 of this [Code] [applicable to rent-stabilized apartments] for a comparable apartment in the building in effect on the date the complaining tenant first occupied the apartment; or
"(ii) the complaining tenant's initial rent reduced by the percentage adjustment authorized by section 2522.8 of this [Code] [providing for upward adjustments of rent based upon vacancies]; or
"(iii) the last registered rent paid by the prior tenant (if within the four year period of review); or
"(iv) if the documentation set forth in subparagraphs (i) through (iii) of this paragraph is not available or is inappropriate, an amount based on data compiled by the DHCR, using sampling methods determined by the DHCR, for regulated housing accommodations" (9 NYCRR 2522.6[b][3]).
In the instant case, the plaintiff argues that the rent for his apartment should be determined by using the amount set forth in 9 NYCRR 2522.6(b)(3)(i).
In 2019, the legislature enacted the Housing Stability and Tenant Protection Act of 2019 (hereinafter HSTPA) (L 2019, ch 36), which extended the statute of limitations to six years, and altered the method for determining legal regulated rent (see Administrative Code of City of NY § 26-516; CPLR 213-a). In Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d 332, 363), the Court of Appeals ruled that "the overcharge calculation amendments cannot be applied retroactively to overcharges that occurred prior to their enactment." The Court noted that, in cases such as this, in which owners removed their apartments from rent regulation pursuant to a mistake in the law which was adopted by the DHCR, a finding of a willful overcharge was "generally inapplicable" (id. at 356, citing Borden v 400 E. 55th St. Assoc., [*4]L.P., 24 NY3d at 398). The Court further found that "under pre-HSTPA law [applicable here], the four-year lookback rule and standard method of calculating legal regulated rent govern in Roberts overcharge cases, absent fraud" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 361).
Here, the deregulation of the plaintiff's apartment was made in good faith (see Matter of Park v New York State Div. of Hous. & Community Renewal, 150 AD3d 105). Further, the late registration of the apartment as rent-stabilized, only after notification by the DHCR of a change in the law several years in the making, does not indicate that Turnbury was engaged in a fraudulent scheme to deregulate the apartment.
"Fraud consists of 'evidence [of] a representation of material fact, falsity, scienter, reliance and injury'" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 356 n 7, quoting Vermeer Owners v Guterman, 78 NY2d 1114, 1116). The elements of fraud must be pleaded, and each element must be set forth in detail (see CPLR 3016[b]; 699 Venture Corp. v Zuniga, 69 Misc 3d 863 [Civ Ct, Bronx County]). That requirement was not met in this case.
There are instances in which failure to timely register an apartment as rent stabilized could constitute evidence of fraud. Prior to 2016, and the DHCR's blanket notification to landlords of the change in the law, there were landlords involved in litigation over failure to register apartments as rent stabilized who nevertheless persisted in that practice (see Kreisler v B-U Realty Corp., 164 AD3d 1117; Townsend v B-U Realty Corp., 67 Misc 3d 1228[A], 2020 NY Slip Op 50662[U] [Sup Ct, NY County]); attempted to obfuscate the regulatory status of the apartment (see Butterworth v 281 St. Nicholas Partners, LLC, 160 AD3d 434); pressured and misled tenants (see 435 Cent. Park W. Tenant Assn. v Park Front Apts., LLC, 183 AD3d 509); or even went so far as to engage in misrepresentations as to whether improvements were in fact made (see Nolte v Bridgestone Assoc. LLC, 167 AD3d 498). It is clear that the plaintiff's apartment was in fact rent stabilized, but that fact was not evidence of fraud, and allegations of fraud based upon speculation are insufficient (see Taylor v 72A Realty Assoc., L.P., 151 AD3d 95, mod Matter of Regina Metro Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332; EMA Realty, LLC v Leyva, 64 Misc 3d 11, 15 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists]).
Further, there is no evidence here that the plaintiff was overcharged. As previously noted, the plaintiff acknowledged that "the legal regulated rent would be higher than Plaintiff Gridley's current rent, which is calculated based on market conditions in the Building's neighborhood." The plaintiff argues that since the subject apartment was improperly deregulated, there was no "legal regulated rent," but Turnbury could have raised the rent to a "false legal regulated rent." Although rent spikes or unexplained increases in rent could be evidence of fraud (see Stafford v A & E Real Estate Holdings, LLC, 188 AD3d 583; Butterworth v 281 St. Nicholas Partners, LLC, 160 AD3d 434; Vendaval Realty, LLC v Felder, 67 Misc 3d 145[A], 2020 NY Slip Op 50786[U] [App Term, 1st Dept]), there is no evidence of that in this case.
An increase in rent alone is insufficient to establish a colorable claim of fraud (see Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358, 367). Further, although
"[t]he failure to file a proper and timely . . . annual rent registration statement shall, until such time as such registration is filed, bar an owner from applying for or collecting any rent in excess of the legal regulated rent in effect on the date of the last preceding registration statement or if no such statements have been filed, the legal regulated rent in effect on the date that the housing accommodation became subject to the registration requirements of this section" (Administrative Code of City of NY § 26-517[e]),
once a late registration is filed, the owner "shall not be found to have collected an overcharge" (id.) based upon the rent increases, if the "increases in the legal regulated rent were lawful except for the failure to file a timely registration" (id.; see 9 NYCRR 2509.3[a]; 2528.4[a]). Therefore, a late registration, standing alone, is generally insufficient to establish a rent overcharge (see Verveniotis v Cacioppo, 164 Misc 2d 334 [App Term, 2d Dept]).
Moreover, in this case, a rental history of the subject apartment was available to the DHCR, and there is no evidence of any misrepresentations by Turnbury (cf. Conason v Megan [*5]Holding, LLC, 25 NY3d 1 [creating a fictitious tenant to justify a rent increase]; Thorton v Baron, 5 NY3d 175 [falsely representing that apartments are not being used as primary residences]).
In view of the foregoing, there were no indicia of fraud in this case that would justify imposition of the default formula for calculating the plaintiff's rent.
The plaintiff's remaining contentions are without merit.
Since the plaintiff has no viable causes of action, the plaintiff's motion for class action certification was properly denied as academic (see Sharabani v Simon Prop. Group, Inc., 186 AD3d 1278; Tepper v Cablevision Sys. Corp., 19 AD3d 585). "It is well settled that '[a] representative action cannot be maintained unless it appears from proper allegations in the complaint that the plaintiff not only has a cause of action, but that [it] is representative of a common or general interest of others" (Rapp v Dime Sav. Bank of N.Y., 64 AD2d 964, 965, affd 48 NY2d 658, quoting Bouton v Van Buren, 229 NY 17, 22; see Estruch v Volkswagenwerk, AG., 97 AD2d 978; Kindel v Kaufman & Broad Homes of Long Is., 67 AD2d 938). That is not the case here.
Accordingly, the order is affirmed insofar as appealed from.
MASTRO, J.P., BRATHWAITE NELSON and IANNACCI, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER:
Aprilanne Agostino
Clerk of the Court