Burrows v 75-25 153rd St., LLC (2023 NY Slip Op 01940)

Burrows v 75-25 153rd St., LLC

2023 NY Slip Op 01940

Decided on April 13, 2023

Appellate Division, First Department

FRIEDMAN, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 13, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Barbara R. Kapnick
David Friedman Tanya R. Kennedy Manuel Mendez Martin Shulman

Index No. 160082/20 Appeal No. 17103-17104 Case No. 2021-04654-2022-02533 

[*1]Brian Burrows, et al., Plaintiffs-Respondents,
v
75-25 153rd Street, LLC, Defendant-Appellant.

Defendant appeals from the order of Supreme Court, New York County (Shawn Kelly, J.), entered on or about November 19, 2021, which denied defendant's motion to dismiss the complaint. Defendant also appeals from the order, same court and Justice, entered on or about May 6, 2022, which effectively granted defendant's motion for reargument and, upon reargument, adhered to its prior determinations.

Rosenberg & Estis, P.C., New York (Deborah Riegel and Ethan R. Cohen of counsel), for appellant.
Newman Ferrara LLP, New York (Roger A. Sachar and Lucas Ferrara of counsel), for respondents.

FRIEDMAN, J. 

In Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d 332 [2020] , rearg denied sub nom. Raden v W7879, LLC, 35 NY3d 1079 [2020]), the Court of Appeals rendered two holdings relevant to this appeal arising from rental overcharge claims under New York City's rent stabilization program, which is governed by the Rent Stabilization Law (RSL) (Administrative Code of City of New York § 26-501 et seq.) and by the Rent Stabilization Code (RSC) (9 NYCRR ch VIII, subch B) promulgated thereunder. One of Regina's relevant holdings was that the Housing Stability and Tenant Protection Act of 2019 (HSTPA) (L 2019, ch 36, effective June 14, 2019), which extended from four years to six years the statute of limitations applicable to an overcharge claim and the rental records that can be considered in adjudicating such a claim, does not apply retroactively to conduct that preceded its enactment (Regina, 35 NY3d at 363 ["the overcharge calculation amendments (of the HSTPA) cannot be applied retroactively to overcharges that occurred prior to their enactment"]).
Regina's other holding pertinent to this appeal was that, under pre-HSTPA law (see former CPLR 213-a [FN1] and former RSL [Administrative Code of City of NY] § 26-516[a][i][FN2] and [a][2][FN3]), the four-year statute of limitations for overcharge claims and the four-year "lookback" rule, which precludes examination of an apartment's rental history more than four years before the commencement of an overcharge action, may be displaced by a "fraud exception" only "where a tenant has made a colorable claim of fraud by identifying substantial indicia, i.e., evidence, of a landlord's fraudulent deregulation scheme to remove an apartment from the protection of rent stabilization" (Regina at 355 [internal quotation marks omitted]; see also id. ["under prior law, review of the rental history outside the four-year lookback period was permitted only in the limited category of cases where the tenant produced evidence of a fraudulent scheme to deregulate"]). Regina reaffirms that, under pre-HSTPA law, the fraud exception, where it applies, permits examination of the rental history outside the four-year lookback period "solely to ascertain whether fraud occurred — not to furnish evidence for calculation of the base date rent or permit recovery for years of overcharges barred by the statute of limitations[*2]. In fraud cases, this Court sanctioned the use of the default formula to set the base date rent. Otherwise, for overcharge calculation purposes, the base date rent was the rent actually charged on the base date (four years prior to initiation of the claim) and overcharges were to be calculated by adding the rent increases legally available to the owner under the RSL during the four-year recover period" (id. at 355-356 [internal citation omitted]).
In its recent decision in Casey v Whitehouse Estates, Inc. (__ NY3d __, 2023 NY Slip Op 01351 [March 16, 2023]), the Court of Appeals unanimously reaffirmed Regina's holding that, under pre-HSTPA law, "review of rental history outside the four-year lookback period is permitted only where the tenant produced evidence of a fraudulent scheme to deregulate" (Casey, 2023 NY Slip Op 01351, at *1 [internal quotation marks and brackets omitted], quoting Regina, 35 NY3d at 355).
The primary question on this appeal is whether plaintiffs, who allege that the predecessor in interest of defendant 75-25 153rd Street, LLC initially registered an unlawfully inflated "legal regulated rent" for each of their apartments in 2007, have sufficiently alleged, in this action commenced in 2020, the perpetration of "a fraudulent scheme to deregulate" so as to avoid the bar of the four-year lookback rule and to allow recalculation of the legal rent on the base date (in 2016), utilizing the default formula referenced in Regina, as a basis for overcharge damages. We hold that plaintiffs have failed to allege such a fraudulent scheme because neither plaintiffs nor their predecessors in interest could have reasonably relied upon the inflated legal regulated rents on the registration statements. As the Court of Appeals recognized in Regina, reasonable reliance is as much an element of fraud in this context as in others (see id. at 356 n 7 ["Fraud consists of evidence of a representation of material fact, falsity, scienter, reliance and injury"] [emphasis added, internal quotation marks and brackets omitted]). As more fully explained below, the inflation of the legal regulated rents set forth on the publicly filed registration statements was evident from the registration statements themselves, negating the element of reliance as a matter of law.
The subject building is located at 75-25 153rd Street in Kew Gardens Hills, Queens. The building was built in or about 2004 and was acquired by defendant in 2015. At all relevant times, the building's successive owners have received benefits under Real Property Tax Law § 421-a (the 421-a program). The 421-a program, which is intended to encourage the creation of multiple-dwelling housing in the City of New York, affords owners of newly constructed or converted multiple-dwelling properties certain tax benefits, subject to certain conditions. As here relevant, one of the requirements for participation in the 421-a program is that all apartments in the building be subject to rent stabilization [*3]while the owner receives benefits under the program.
The record contains the rent registration history from 2005 through 2020 of each of the three subject apartments (apartments 302, 309 and 437).[FN4] These histories were generated by the New York State Division of Housing and Community Renewal (DHCR) from the information in its files. According to the registration history, each apartment was first leased to a tenant during the 2005 calendar year and its initial rent was registered by defendant's predecessor in interest in 2007. As admitted in the complaint, the registration history for each apartment shows, on its face, both a higher "Legal Regulated Rent" and a lower "Actual Rent Paid" under the initial lease. Specifically, apartment 302 was registered as having an initial legal regulated rent of $5,000 and an initial actual rent paid of $1,999; apartment 309 was registered as having an initial legal regulated rent of $6,000 and an initial actual rent paid of $3,119; and apartment 437 was registered as having an initial legal regulated rent of $3,000 and an initial actual rent paid of $1,650. The record reflects that the registrations for subsequent years, through 2020 in the case of Apartments 309 and 437, and through 2018 in the case of Apartment 302, each set forth a greater legal regulated rent and a lesser actual rent paid or preferential rent.
Before the enactment of the HSTPA, the law generally permitted a landlord to collect from a tenant a lower "preferential rent" while registering a higher rent as the legal regulated rent, so long as both rents were disclosed on the registration statement and in the vacancy or renewal lease pursuant to which the preferential rent was first charged (see former RSL [Administrative Code of City of NY] § 26-511[c][14] prior to its amendment by L 2019, ch 36, Part E, § 2, and by L 2019, ch 39, Part Q, § 12; RSC [9 NYCRR] § 2521.2[a], [b]; former DHCR Fact Sheet #40 [January 2014 rev.] [hereinafter, fact sheet 40]).[FN5] At all relevant times, however, the initial legal regulated rent of an apartment in a building receiving tax benefits under the 421-a program has been required, in pertinent part, to "be the initial adjusted monthly rent charged and paid" (RSC [9 NYCRR] § 2521.1[g] [emphasis added]). Accordingly, insofar as the initial registration statement for each subject apartment set forth a "legal regulated rent" higher than the rent actually charged to the tenant (as also reflected on the registration statement), the "legal regulated rent" set forth on the initial registration statement was unlawfully inflated. Further, because the legal regulated rents shown on registration statements for subsequent years were based on the legal regulated rent set forth on the initial registration statements, the legal regulated rents registered for subsequent years were also unlawful. Defendant does not dispute this point.
Based on the above-described discrepancy between each apartment's legal regulated rent and the preferential [*4]rent that was actually paid, as registered with DHCR in 2007 and thereafter, plaintiffs commenced this action in 2020 — 13 years after the registration of the initial rents — to recover rental overcharges alleged to have resulted from the use of the inflated initial legal regulated rent figure as the base from which future legal regulated rents were calculated. However, even if plaintiffs actually paid any such overcharges (which defendant denies), the claims to recover such overcharges are untimely under the applicable four-year statute of limitations and lookback rule of former CPLR 213-a and former RSL (Administrative Code of City of NY) § 26-516(a), as those provisions read before they were amended by the HSTPA (see footnotes 1, 2 and 3 above). As plaintiffs concede, their claims, inasmuch as they are based upon alleged conduct that long predates the enactment of the HSTPA, are governed by the pre-HSTPA version of CPLR 213-a and RSL (Administrative Code of City of NY) § 26-516(a) (see Matter of Regina, 35 NY3d at 363 ["the overcharge calculation amendments (of the HSTPA) cannot be applied retroactively to overcharges that occurred prior to their enactment"]). Accordingly, since plaintiffs' claims are based upon inflated figures for legal regulated rents that were registered far more than four years before the commencement of this action in 2020, their claims are time-barred.
Plaintiffs argue that, notwithstanding the four-year statute of limitations and four-year lookback rule of former CPLR 213-a and former RSL (Administrative Code of City of NY) § 26-516(a), they may still recover for any overcharges within the limitation period that are the result of a fraudulent scheme to avoid or subvert rent stabilization (see Regina, 35 NY3d at 354-355). In this regard, plaintiffs rely on the lookback rule's aforementioned fraud exception, as recognized in Regina.
Plaintiffs' reliance on the fraud exception is unavailing because the record, and plaintiffs' own admissions in their complaint, establish that there was no such fraudulent scheme in this case. As previously noted, DHCR's rental histories of the subject apartments (which are part of the record and referenced in the complaint) document that the registrations in question identified both a higher legal regulated rent and a lower preferential rent that the tenant actually paid. It is undisputed that this rental history has been available for public inspection at all relevant times. Thus, the inflation of the legal regulated rents was evident from the face of the registration statements on which plaintiffs' claims are based.
Beyond the information available to the public from the apartments' registration histories, plaintiffs' respective initial leases, which are reproduced in the record, directly and expressly notified them of the inflated legal regulated rents registered for their units. Paragraph 3 of each lease states: "Your monthly rent for the Apartment is [the amount of the legal registered [*5]rent] and the preferential rent is [a specified lesser amount]." In addition, each lease has attached to it a "Rider VI," signed by the tenant or tenants, which provides in pertinent part:
"1. The parties agree that the legal regulated rent for the subject apartment is [the monthly rent specified in paragraph 3 of the main lease] per month, as set forth in the Lease . . . ; and
"2. During the Lease term, the legal regulated rent shall remain [the foregoing amount] per month; however, the parties agree that the Tenant may tender, and the Owner will accept, a reduced amount of [specified lesser amount] per month in full payment and satisfaction for the monthly rent for the Lease period . . . , representing a preferential rent . . . ; and
"3. It is acknowledged and agreed by the parties that the legal regulated rent for any subsequent lease renewal will be based upon the legal regulated rent set forth in the Lease, as subsequently adjusted by all appropriate and permissible increase[s] permitted under the [RSL] and [RSC] . . . ."
In view of the foregoing, as a matter of law, neither plaintiffs nor any of their predecessors could have reasonably relied on the inflated "legal regulated rent" figures that appeared on face of the registration statements (see Matter of Kostic v New York State Div. of Hous. & Community Renewal, 188 AD3d 569, 570 [1st Dept 2020] [where the "error (in an exit registration) was plain on its face," the tenant "could not have reasonably relied on the exit registration"]). Since "[r]easonable reliance is an element of fraud for purposes of evading the four-year lookback restriction for pre-HSTPA overcharge claims" (id., citing Regina, 35 NY3d at 356 n 7), the undisputed disclosure in the publicly available rental histories of the discrepant figures for legal regulated rent and preferential rent negates any inference of fraud as a matter of law. Dismissal of the complaint is proper where a tenant asserting an otherwise time-barred overcharge claim "fail[s] to allege a colorable claim of fraud" (Regina, 35 NY3d at 362, aff'g Reich v Belnord Partners, LLC, 168 AD3d 482 [1st Dept 2019]; see also Gridley v Turnbury Vil., LLC, 196 AD3d 95, 101 [2d Dept 2021] [for the fraud exception to the pre-HSTPA statute of limitations and lookback rule to apply, "(t)he elements of fraud must be pleaded, and each element must be set forth in detail"], lv denied __ NY3d __, 2021 NY Slip Op 75990 [2021]).
Nor does plaintiffs' position find support in RSC (9 NYCRR) § 2521.2(c). While it is true that section 2521.2(c), pre-HSTPA, required a landlord charging a preferential rent "to maintain . . . the rental history of the housing accommodation immediately preceding such preferential rent to the present," that regulation did not override the statute of limitations and litigation lookback period of former CPLR 213-a and former RSL § 26-516(a), which, in the absence of indicia of fraud, insulated from challenge any registered legal regulated rent not [*6]challenged within four years after its registration.[FN6]
Plaintiff Waller asserts a separate claim that, in calculating the increase of his rent upon renewing his lease of apartment 309 in 2019, defendant improperly failed to take into account a concession of two rent-free months that had been granted in his initial lease, executed in 2017. Waller's initial lease, which is dated June 12, 2017, was for a term of approximately 25 months beginning on July 3, 2017, and ending on July 31, 2019. While Waller's 2017 lease sets a monthly preferential rent of $3,950.00, an attached rider, signed by Waller and defendant, provides in pertinent part: "The terms of the Lease include two (2) free month(s)." Defendant's rent ledger for Waller's apartment indicates that Waller was charged and paid no rent for the months of August and September of 2017. Waller's one-year renewal lease, dated July 9, 2019 (after the HSTPA's abolition of preferential rents), provides for a monthly rent of $3,975.00, an increase of only $25 over the preferential rent set forth in Waller's previous lease. Waller contends, however, that the two months of free rent he received under his initial lease should be prorated over the full term of the lease to yield a "net effective rent" of approximately $3,600, which figure, he argues, should have been used as the basis for calculating the maximum lawful amount of his renewal rent.[FN7]
Defendant argues that it was permitted to disregard the two-month concession in calculating the rental increase under the aforementioned fact sheet 40. As this Court has noted, fact sheet 40 "provided that a one-time rent concession that applies to a specific month . . . does not affect the legal regulated rent, whereas prorated discounts are actually preferential rents, which must be the rent registered under RSC 2521.1(g)" for buildings under the 421-a program (Flynn v Red Apple 670 Pac. St., LLC, 200 AD3d 607, 609 [1st Dept 2021]).[FN8] Waller counters that, because the reason for the two-month concession in his 2017 lease cannot be discerned from the record, he should be afforded an opportunity to conduct discovery to explore the possibility that the concession was actually "a pretext to manipulate and circumvent the rent laws," which, if true, would require that the concession be taken into account in determining the true preferential rent during the term of the initial lease. In this regard, Waller relies on Chernett v Spruce 1209, LLC (200 AD3d 596 [1st Dept 2021]), in which this Court held that rent concessions used to "improperly manipulate[]" the initial legal regulated rent of an apartment in a 421-a building should be "take[n] into account . . . in calculating the proper initial legal rents under the 421-a program" (id. at 598). Waller distinguishes Flynn on the ground that sufficient justification for the concession was evident from the record in that case, in that, at the time the concession was granted, the building was still in the final stages of construction [*7]and had not yet received a permanent certificate of occupancy (Flynn, 200 AD3d at 608-609).
Waller's overcharge claim based on the two-month rent concession is legally insufficient. In Flynn, this Court approved and gave effect to fact sheet 40's differentiation between concessions for specific months, which are not considered preferential rents, and prorated concessions, which are so considered (Flynn, 200 AD3d at 609). Although the HSTPA amended the RSL to prohibit an owner from withdrawing a preferential rent upon the renewal of a lease, nothing in the HSTPA or its legislative history indicates that the legislature intended to change the preexisting definition of a preferential rent (see RSC [9 NYCRR] § 2521.2[a] [defining "preferential rent" as "the amount of rent charged to and paid by the tenant"]) or to disturb the distinction between preferential rents and concessions promulgated by DHCR in fact sheet 40 (which, at the time of the adoption of the HSTPA, was last revised in January 2014, more than five years before). Had the legislature intended to require that all concessions be treated as preferential rents, it could easily have so provided expressly in the HSTPA. The legislature having left this distinction in place, it is plain that the benefit afforded to Waller — two particular rent-free months, with the full monthly rent payable for each month of the remainder of the lease's term — qualifies as a concession under the terms of fact sheet 40. Further, the concession rider to the 2017 lease — which was executed about two years before the HSTPA was enacted, during a period when the withdrawal of preferential rents upon renewal was still generally lawful — "must be read in the light of the circumstances existing at its making" (Flynn, 200 AD3d at 609 [internal quotation marks omitted], quoting Matter of Century Operating Corp. v Popolizio, 60 NY2d 483, 488 [1983]).[FN9]
Finally, the claims for declaratory relief to the effect that the apartments are subject to rent stabilization should have been dismissed for lack of a justiciable controversy. It is undisputed that the units have been continuously registered as rent-stabilized since 2007 and there is no allegation that either defendant or its predecessors ever have purported to deregulate them.
Accordingly, the order of Supreme Court, New York County (Shawn Kelly, J.), entered on or about November 19, 2021, which denied defendant's motion to dismiss the complaint, should be reversed, on the law, and the motion granted, without costs.
The appeal from the order, same court and Justice, entered on or about May 6, 2022, which effectively granted defendant's motion for reargument and, upon reargument, adhered to its prior determinations, should be dismissed, without costs, as academic.
Order, Supreme Court, New York County (Shawn Kelly, J.), entered on or about November 19, 2021, reversed, on the law, and the motion granted, without costs. Appeal from order, same court and Justice, entered on [*8]or about May 6, 2022, dismissed, without costs, as academic.
Opinion by Friedman, J. All concur.
Kapnick, J.P., Friedman, Kennedy, Mendez, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 13, 2023

Footnotes

Footnote 1: Before it was amended by the HSTPA in 2019 (see L 2019, ch 36, pt. F, § 6), CPLR 213-a provided: "An action on a residential rent overcharge shall be commenced within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of any overcharge may be based upon an overcharge having occurred more than four years before the action is commenced. This section shall preclude examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action."

Footnote 2: Before it was amended by the HSTPA in 2019 (see L 2019, ch 36, pt. F, § 4), RSL (Administrative Code of City of NY) § 26-516(a)(i) provided in pertinent part: "[T]he legal regulated rent for purposes of determining an overcharge, shall be the rent indicated in the annual registration statement filed four years prior to the most recent registration statement . . . plus in each case any subsequent lawful increases and adjustments. Where the amount of rent set forth in the annual rent registration statement filed four years prior to the most recent registration statement is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter."

Footnote 3: Before it was amended by the HSTPA in 2019 (see L 2019, ch 36, pt. F, § 4), RSL (Administrative Code of City of NY) § 26-516(a)(2) provided in pertinent part: "[A] complaint under this subdivision shall be filed with the state division of housing and community renewal within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of an overcharge may be based upon an overcharge having occurred more than four years before the complaint is filed."

Footnote 4: At the inception of this action in November 2020, apartment 302 was occupied by plaintiff Brian Burrows, apartment 309 was occupied by plaintiff Sam Waller, and apartment 437 was occupied by plaintiffs Craig Chung and Olecia Chung. No plaintiff in this action was an initial tenant. Burrows first occupied his unit in 2020, Waller first occupied his unit in 2017, and the Chungs first occupied their unit in 2019.

Footnote 5: Under pre-HSTPA law, an owner was permitted to "decide to terminate the preferential rent and charge the higher legal regulated rent upon renewal of the lease or when the tenant permanently vacate[d] the apartment" (fact sheet 40, at 1). The HSTPA, as further amended by L 2019, ch 39, pt. Q, § 12, prohibited this practice by adopting the following language: "For any tenant who is subject to a lease on or after [June 14, 2019], or is or was entitled to receive a renewal or vacancy lease on or after such date, upon renewal of such lease, the amount of rent for such housing accommodation that may be charged and paid shall be no more than the rent charged to and paid by the tenant prior to that renewal, as adjusted by the most recent applicable guidelines increases and any other increases authorized by law" (RSL [Administrative Code of the City of NY] § 26-511[c][14]).

Footnote 6: Given that there was no deception, we need not consider defendant's further argument that it has presented conclusive documentary evidence that plaintiffs were never actually overcharged. We note, however, that none of plaintiffs' allegations suggest that any of them ever paid a rent based on the inflated initial "legal regulated rent" registered for his or her apartment by defendant's predecessor-in-interest.

Footnote 7: It is undisputed that, in 2019, 1.5 percent was the permissible rental increase for a one-year renewal of the lease for a rent-stabilized apartment. Thus, if Waller's rent under his initial lease is deemed to have been $3,600, he would have been entitled to a rent of no more than $3,654 upon signing a one-year renewal lease.

Footnote 8: In pertinent part, fact sheet 40, under the heading "Concessions," stated (at 3):
"There are two types of rent concessions. One is concession for specific months, as for example, where the lease provides that the tenant will not have to pay rent for one or more specified months during the lease term. This type of concession is not considered a preferential rent.
"The other type is a prorated concession, where the dollar value of the rent free month(s) is prorated over the entire term of the lease and not tied to a specific month or months. A prorated concession is really the same as a preferential rent and will be treated in the same manner."

Footnote 9: Chernett is distinguishable in that the tenants in that case "alleged a fraudulent scheme to evade the requirement of the 421-a program by providing construction concessions well after construction was complete" (200 AD3d at 597). No such false justification for the concession is alleged here.