[938 NE2d 924, 912 NYS2d 491]

In the Matter of Sylvie Grimm, Respondent, v State of New York Division of Housing and Community Renewal Office of Rent Administration, Appellant. 151 Owners Corp., Intervenor-Appellant.

Argued September 13, 2010; decided October 19, 2010

**POINTS OF COUNSEL**

*Gary R. Connor, General Counsel, New York State Division of Housing and Community Renewal,* New York City (*Martin B. Schneider* of counsel), for appellant. The Division of Housing and Community Renewal's order determining that there was no rent overcharge is supported by a rational basis in the record and the law and is fully entitled to judicial affirmance. (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Matter of Peckham v Calogero,* 12 NY3d 424; *Matter of Gaines v New York State Div. of Hous. & Community Renewal,* 90 NY2d 545; *Matter of Hatanaka v Lynch,* 304 AD2d 325; *Matter of Silver v Lynch,* 283 AD2d 213; *Rovito v Melendez,* 175 Misc 2d 279; *Matter of Partnership 92 LP v State of N.Y. Div. of Hous. & Community Renewal,* 11 NY3d 859; *Thornton v Baron,* 5 NY3d 175; *Matter of Gilman v New York State Div. of Hous. & Community Renewal,* 99 NY2d 144; *Matter of Hawco v State of N.Y. Div. of Hous. & Community Renewal,* 281 AD2d 294.)

*Belkin Burden Wenig & Goldman, LLP,* New York City

(*Magda L. Cruz, Sherwin Belkin* and *Alexa Englander* of counsel), for intervenor-appellant. I. There was no legal basis to disturb the Division of Housing and Community Renewal's order denying tenant's overcharge complaint. (*Catlin v Sobol,* 77 NY2d 552; *Matter of Purdy v Kreisberg,* 47 NY2d 354; *Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal,* 75 NY2d 206; *Matter of Mid-State Mgt. Corp. v New York City Conciliation & Appeals Bd.,* 112 AD2d 72, 66 NY2d 1032; *Roberts v Tishman Speyer Props., L.P.,* 13 NY3d 270; *NLRB v Hearst Publications, Inc.,* 322 US 111; *Matter of Salvati v Eimicke,* 72 NY2d 784; *Matter of Chinitz v New York State Div. of Hous. & Community Renewal,* 191 AD2d 222.) II. The four-year rule bars examination of the apartment's rental history preceding the base date. (*Matter of Gilman v New York State Div. of Hous. & Community Renewal,* 99 NY2d 144; *Zafra v Pilkes,* 245 AD2d 218; *Matter of Hawco v State of N.Y. Div. of Hous. & Community Renewal,* 281 AD2d 294; *Matter of Payne v New York State Div. of Hous. & Community Renewal,* 287 AD2d 415; *Matter of Anderson v Lynch,* 292 AD2d 603; *Myers v Frankel,* 292 AD2d 575; *Theoharidou v Newgarden,* 176 Misc 2d 97; *Rovito v Melendez,* 175 Misc 2d 279; *Matter of Brinckerhoff v New York State Div. of Hous. & Community Renewal,* 275 AD2d 622; *Matter of Silver v Lynch,* 283 AD2d 213.) III. The cases relied on by the courts below are inapplicable to the facts at bar. (*Thornton v Baron,* 5 NY3d 175; *Levinson v 390 W. End Assoc., L.L.C.,* 22 AD3d 397; *Drucker v Mauro,* 30 AD3d 37, 7 NY3d 844; *Matter of Gomez v New York State Div. of Hous. & Community Renewal,* 23 Misc 3d 1107[A], 2009 NY Slip Op 50613[U]; *Oxford Towers Co., LLC v Wagner,* 58 AD3d 422; *Stecher v 85th Estates Co.,* 43 AD3d 732; *Blanco v American Tel. & Tel. Co.,* 90 NY2d 757; *Duffy v Horton Mem. Hosp.,* 66 NY2d 473; *Jensen v General Elec. Co.,* 82 NY2d 77; *Matter of King v Carey,* 57 NY2d 505.) IV. Tenant's "fraud" allegations were not meritorious. (*Matter of Peckham v Calogero,* 12 NY3d 424; *Bingham v New York City Tr. Auth.,* 99 NY2d 355; *Persky v Bank of Am. N.A.,* 261 NY 212; *Matter of Muller v New York State Div. of Hous. & Community Renewal,* 263 AD2d 296; *Matter of McCarthy v New York State Div. of Hous. & Community Renewal,* 290 AD2d 313; *Matter of Orin Mgt. Corp. v New York State Div. of Hous. & Community Renewal,* 275 AD2d 126, 97 NY2d 630; *Newgarden v Theoharidou,* 247 AD2d 367; *Matter of Giffuni Bros. v New York State Div. of Hous. & Community Renewal,* 211 AD2d 545; *Otto Roth & Co. v Gourmet Pasta,* 277 AD2d 293; *Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403.)

*Legal Services NYC,* Brooklyn (*Edward Josephson* of counsel), for respondent. I. The Appellate Division properly applied this Court's holding in *Thornton v Baron* (5 NY3d 175 [2005]) to the proceeding below. (*Myers v Frankel,* 184 Misc 2d 608, 292 AD2d 575; *Cecilia v Irizarry,* 292 AD2d 557; *Levinson v 390 W. End Assoc., L.L.C.,* 22 AD3d 397; *Matter of Mangano v New York State Div. of Hous. & Community Renewal,* 30 AD3d 267; *Ruradan Corp. v Natiello,* 21 Misc 2d 1129[A], 2008 NY Slip Op 52279[U]; *Jazilek v Abart Holdings LLC,* 10 NY3d 943; *Drucker v Mauro,* 30 AD3d 37; *Matter of Partnership 92 LP v State of N.Y. Div. of Hous. & Community Renewal,* 11 NY3d 859; *Matter of Ador Realty, LLC v Division of Hous. & Community Renewal,* 25 AD3d 128; *Matter of H.O. Realty Corp. v State of N.Y. Div. of Hous. & Community Renewal,* 46 AD3d 103.) II. The Appellate Division properly remanded this proceeding to the Division of Housing and Community Renewal based on substantial indicia of fraud in the record. (*Jazilek v Abart Holdings LLC,* 10 NY3d 943; *Drucker v Mauro,* 30 AD3d 37.) III. The Division of Housing and Community Renewal's interpretation of the Rent Stabilization Law of 1969 is not entitled to special deference. (*Roberts v Tishman Speyer Props., L.P.,* 13 NY3d 270; *Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal,* 5 NY3d 303; *Matter of Dworman v New York State Div. of Hous. & Community Renewal,* 94 NY2d 359; *Matter of ATM One v Landaverde,* 2 NY3d 472.)

*Rosenberg & Estis, P.C.,* New York City (*Jeffrey Turkel* of counsel), for Rent Stabilization Association of NYC, Inc., amicus curiae. The legislative history of Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-516 (a) establishes that the Division of Housing and Community Renewal, in its challenged order, correctly interpreted and applied the statute by refusing to examine rental events occurring outside the four-year period of limitations. (*Pultz v Economakis,* 10 NY3d 542; *Matter of ATM One v Landaverde,* 2 NY3d 472; *Consedine v Portville Cent. School Dist.,* 12 NY3d 286; *Matter of Sutka v Conners,* 73 NY2d 395; *Myers v Frankel,* 184 Misc 2d 608, 292 AD2d 575; *Matter of Round Hill Mgt. Co. v Higgins,* 177 AD2d 256; *Zafra v Pilkes,* 245 AD2d 218; *Matter of Gilman v New York State Div. of Hous. & Community Renewal,* 99 NY2d 144; *Thornton v Baron,* 5 NY3d 175; *Consedine v Portville Cent. School Dist.,* 12 NY3d 286.)

*Horing Welikson & Rosen, P.C.,* Williston Park (*Niles C. Welikson* of counsel), for Community Housing Improvement

Program, amicus curiae. I. The Appellate Division's holding in this matter is contrary to its own prior decisions and erroneously adds an exception to statutory criteria. (*Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144; *Matter of Orin Mgt. Corp. v New York State Div. of Hous. & Community Renewal*, 275 AD2d 126; *Matter of Mengoni v New York State Div. of Hous. & Community Renewal*, 97 NY2d 630; *Matter of H.O. Realty Corp. v State of N.Y. Div. of Hous. & Community Renewal*, 46 AD3d 103; *Zafra v Pilkes*, 245 AD2d 218; *Matter of Muller v New York State Div. of Hous. & Community Renewal*, 263 AD2d 296; *East W. Renovating Co. v New York State Div. of Hous. & Community Renewal*, 16 AD3d 166; *Thornton v Baron*, 5 NY3d 175.) II. The Appellate Division's determination constitutes impermissible judicial legislation as well as an erroneous shifting of the burden of proof where a claim of fraud is involved. (*Prego v City of New York*, 147 AD2d 165; *Matter of Daniel C.*, 99 AD2d 35, 63 NY2d 927; *Nathan v Equitable Trust Co.*, 222 App Div 389; *New York Univ. v Continental Ins. Co.*, 87 NY2d 308; *Matter of Muller v New York State Div. of Hous. & Community Renewal*, 263 AD2d 296.)

## OPINION OF THE COURT

CIPARICK, J.

On this appeal, we are asked to determine whether the rationale employed in *Thornton v Baron* (5 NY3d 175 [2005]), which allowed the parties to look back farther than four years, applies in a situation where it is alleged that the standard base date rent is tainted by fraudulent conduct on the part of a landlord. We conclude that it does, and that such base date rent may not be used as a basis for calculating subsequent regulated rent if fraud is indeed present.

### I.

In 1999, prior to the tenancy of petitioner Sylvie Grimm, the rent-stabilized apartment at issue here was registered with the Division of Housing and Community Renewal (DHCR) at a monthly rent of $578.86. In 2000, upon a vacancy in the apartment, rather than using the required rent-setting formula to determine the rent that it could legally charge the next tenants of the apartment, the owner notified prospective tenants that the rent for the subject apartment was $2,000 per month. However, the owner informed the prospective tenants that, if they agreed to make certain repairs and improvements to the apartment at their own expense, the rent would be reduced to

$1,450. Both sums were unlawful because of the rent-stabilized status of the apartment. The tenants accepted the offer, and signed a written lease agreement without a rent-stabilized lease rider. The owner apparently did not provide those tenants with a statement showing the apartment was registered with DHCR.

In 2004, petitioner moved into the apartment, agreeing to the rental rate of $1,450. Her initial lease did not specify that the apartment was rent stabilized. Thereafter, in July 2005, petitioner filed a rent overcharge complaint with DHCR. The landlord, intervenor 151 Owners Corp., soon after receiving the overcharge complaint, sent petitioner revised versions of her 2004 and 2005 leases which advised that the apartment was subject to rent stabilization. In its answer to the overcharge complaint, 151 Owners Corp. admitted that the apartment had not been registered with DHCR since 1999. At the same time it filed the answer to the overcharge complaint, 151 Owners Corp. filed registration statements with DHCR for the years 2001 through 2005.

In an order dated June 21, 2006, the DHCR Rent Administrator denied petitioner's overcharge complaint on the ground that the rent on the "base date"—i.e., the date four years prior to the filing of the complaint—was $1,450, and the rent adjustments subsequent to the base date had been lawful. The Rent Administrator did not address the issue whether the registration statement in effect on the base date was reliable or set forth a lawful rent. DHCR denied petitioner's request for administrative review of the Rent Administrator's determination, and denied her request for reconsideration.

Petitioner thereafter commenced this CPLR article 78 proceeding challenging DHCR's determination denying administrative review. The petition sought (1) a declaration that she was the legal rent-stabilized tenant of the apartment and (2) remand to DHCR "with the direction that the rent for the subject apartment should be frozen at the 1999 amount, because the owner failed to register the subject apartment for 2000, and computing the rent overcharge amount."

Supreme Court granted the petition, vacated DHCR's determination and "remanded [the matter] . . . for reconsideration in accordance with [the court's] decision" (2007 NY Slip Op 34184[U], *5). Supreme Court noted that DHCR's determination simply calculated the rent by assuming, without actually determining, that the registration in effect on the base date was

reliable. The court also noted that DHCR did not specifically reject petitioner's allegations of fraud. The court reasoned, under *Thornton v Baron* (5 NY3d 175, 181 [2005]), that DHCR's failure to consider petitioner's allegations of fraud and the reliability of the rent charged on the base date warranted remand to the agency for de novo review of the overcharge complaint.

DHCR and 151 Owners Corp. separately appealed. The Appellate Division affirmed, with two Justices dissenting (*Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin.*, 68 AD3d 29 [1st Dept 2009]). The court reasoned:

> "Given the specific facts of this case, DHCR should not be allowed to turn a blind eye to what could be fraud and an attempt by the landlord to circumvent the Rent Stabilization Law . . .

> "[W]here, as here, there is an indication of possible fraud that would render the rent records unreliable, it is an abuse of discretion for DHCR not to investigate it" (*id.* at 33).

The two dissenting Justices voted to reverse and "would [have found] that [DHCR] acted rationally in complying with the legislative intent expressed in the statute of limitations set forth in CPLR 213-a and [the] Rent Stabilization Law" (*id.* at 34 [Buckley, J., dissenting]).

DHCR and 151 Owners Corp. appealed by permission of the Appellate Division, which certified the following question: "Was the order of Supreme Court, as affirmed by this Court, properly made?" We now affirm and answer the certified question in the affirmative.

## II.

As we have previously explained, rent overcharge claims are generally subject to a four-year statute of limitations. Specifically, Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-516 (hereinafter Rent Stabilization Law), as amended by the Rent Regulation Reform Act (RRRA) of 1997, states:

> "[A] complaint under this subdivision shall be filed with [DHCR] within four years of the first overcharge alleged and no determination of an

overcharge and no award or calculation of an award of the amount of an overcharge may be based upon an overcharge having occurred more than four years before the complaint is filed . . . This paragraph shall preclude examination of the rental history of the housing accommodation prior to the four-year period preceding the filing of a complaint pursuant to this subdivision" (Rent Stabilization Law § 26-516 [a] [2]; *see also* CPLR 213-a).

The RRRA "clarified and reinforced the four-year statute of limitations applicable to rent overcharge claims . . . by limiting examination of the rental history of housing accommodations prior to the four-year period preceding the filing of an over-charge complaint" (*Thornton*, 5 NY3d at 180, citing *Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 149 [2002]; *see also Matter of Cintron v Calogero*, 15 NY3d 347 [2010] [decided today]; Governor's Approval Mem, Bill Jacket, L 1997, ch 116). To effectuate the purpose of the four-year limitations period, in rent overcharge cases DHCR regulations, as relevant here, set the "legal regulated rent" as the rent charged on the "base date," which is the "date four years prior to the date of the filing of [the overcharge] complaint" plus any subsequent lawful increases (9 NYCRR 2520.6 [e], [f] [1]; 2526.1 [a] [3] [i]).

The four-year limitations period was explained in our decision in *Thornton* (5 NY3d 175 [2005]), where we held that a lease provision purporting to exempt an apartment from the Rent Stabilization Law in exchange for an agreement not to use the apartment as a primary residence was void as against public policy (*see id.* at 179-180). Our ruling was made in connection with a scheme between a landlord and an illusory tenant to agree that an apartment would not be used as the named tenant's primary residence, resulting in the elimination of the rent-stabilized status of the apartment. Acknowledging that the apartment's prior rental history could not be examined, and that the stabilized rent before the fraudulent scheme was of no relevance, we nonetheless rejected the owner's contention that "the legal regulated rent should be established by simple reference to the rental history" on the date four years prior to the commencement of the overcharge action (*id.* at 180-181). We explained that the lease was "void at its inception" because its "circumvent[ion of] the Rent Stabilization Law" violated public policy (*id.* at 181). As a result, the rent registration statement in effect on the base date "listing this illegal rent was also a

nullity" (*id.*). Rather than using the registration statement to ascertain the rent on the base date, we instructed DHCR to use the so-called default formula to calculate the rent on the base date, as it does when no reliable records are available (*see id.*; *see also Levinson v 390 W. End Assoc., L.L.C.*, 22 AD3d 397, 400-401 [1st Dept 2005]).[1]

DHCR contends that our holding in *Thornton* should be constrained to the narrow set of circumstances described in that case and that we should limit its application to cases involving illusory tenancies. We disagree and conclude that, where the overcharge complaint alleges fraud, as here, DHCR has an obligation to ascertain whether the rent on the base date is a lawful rent. Accordingly, here, as the Appellate Division concluded, DHCR acted arbitrarily and capriciously in failing to meet that obligation where there existed substantial indicia of fraud on the record.

In particular, here it is alleged that the tenants immediately preceding petitioner paid significantly more than the previously registered rent, and were not given a rent-stabilized lease rider.[2] Moreover those tenants were informed that their rent would be higher but for their performance of upgrades and improvements at their own expense. Almost simultaneously with the substantial increase in the rent for the affected unit, the owner ceased filing annual registration statements (*see* Rent Stabilization Code [9 NYCRR] § 2528.3 [a] [requiring annual registration statements be filed with DHCR]) and later filed several years' registration statements retroactively after receiving petitioner's overcharge complaint. Finally, petitioner's initial lease did not contain a rent-stabilized rider. The combination of these factors should have led DHCR to investigate the legality of the base date rent, rather than blindly using the rent charged on the date four years prior to the filing of the rent overcharge claim.

Our holding should not be construed as concluding that fraud exists, or that the default formula should be used in this case.

---

1. The default formula "uses the lowest rent charged for a rent-stabilized apartment with the same number of rooms in the same building on the relevant base date" (*Thornton*, 5 NY3d at 180 n 1; *Levinson*, 22 AD3d at 400-401).

2. The Rent Stabilization Code requires that, for each vacancy or renewal lease for premises subject to the Rent Stabilization Code, the landlord "shall furnish to each tenant signing a vacancy or renewal lease, a rider in a form promulgated or approved by the DHCR, in larger type than the lease, describing the rights and duties of owners and tenants as provided for under" the Rent Stabilization Law (Rent Stabilization Code [9 NYCRR] § 2522.5 [c] [1]).

Rather, we merely conclude that DHCR acted arbitrarily in disregarding the nature of petitioner's allegations and in using a base date without, at a minimum, examining its own records to ascertain the reliability and the legality of the rent charged on that date.

DHCR also argues that, under the Appellate Division's holding, any "bump" in an apartment's rent—even those authorized without prior DHCR approval, such as rent increases upon installation of improvements to an apartment (*see* Rent Stabilization Law § 26-511 [c] [13])—will establish a colorable claim of fraud requiring DHCR investigation. Again, we disagree. Generally, an increase in the rent alone will not be sufficient to establish a "colorable claim of fraud," and a mere allegation of fraud alone, without more, will not be sufficient to require DHCR to inquire further. What is required is evidence of a landlord's fraudulent deregulation scheme to remove an apartment from the protections of rent stabilization. As in *Thornton*, the rental history may be examined for the limited purpose of determining whether a fraudulent scheme to destabilize the apartment tainted the reliability of the rent on the base date.

In sum, the Appellate Division correctly applied *Thornton* to this rent overcharge proceeding and properly concluded that DHCR has an obligation to ascertain whether petitioner's allegations of fraud warrant the use of the default formula when calculating any rent overcharge that may have occurred. Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

SMITH, J. (dissenting). In *Thornton v Baron* (5 NY3d 175 [2005]) and *Matter of Cintron v Calogero* (15 NY3d 347 [2010] [decided today]), the Court carved out exceptions to the command of the Rent Regulation Reform Act of 1997 that a rent charged more than four years before a tenant complains may not be considered in deciding an overcharge claim. But in this case, the majority goes far beyond making an exception. The majority has, in substance, largely repealed the statute—or, perhaps, has turned it into a source of endlessly complex litigation. I am not sure which it has done, and I am not sure which is worse.

The statute and the regulations implementing it are unequivocal.

"[N]o determination of an overcharge and no award or calculation of an award of the amount of an overcharge may be based upon an overcharge having occurred more than four years before the complaint is filed . . . . This paragraph shall preclude examination of the rental history of the housing accommodation prior to the four-year period preceding the filing of a complaint pursuant to this subdivision" (Rent Stabilization Law [RSL] of 1969 [Administrative Code of City of NY] § 26-516 [a] [2]; *see also id.* § 26-516 [a] ["Where the amount of rent set forth in the annual rent registration statement filed four years prior to the most recent registration statement is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter"]; Rent Stabilization Code [9 NYCRR] § 2526.1 [a] [2]).

*Thornton* and *Cintron* presented special situations in which, for understandable reasons, a majority of the Court decided that this language should not be taken literally. *Thornton* involved an elaborate fraudulent scheme, in which illusory leases containing false representations were created, collusive lawsuits brought and a court misled into entering orders that made it possible to collect illegal rents; the Court held that such an extreme form of misconduct should not be protected by the four-year time bar. *Cintron* presented the problem of how to reconcile the four-year limitation with another section of the statute providing for rent reduction orders of indefinite duration.

But this is a garden-variety overcharge case—perhaps the paradigm of the situation for which the four-year limitation was intended. The landlord charged an illegal rent, and the illegality went undetected for more than four years. The statute says plainly that in such a case, the rent charged four years previously shall not be subject to challenge. But the majority holds that a challenge is allowed.

The majority's justification for this result is that "the overcharge complaint alleges fraud" and that there are "indicia of fraud"—consisting essentially of allegations that the landlord lied to previous tenants about what the legal maximum rent was (majority op at 366). In other words, the majority seems to equate "fraud" with a wilful overcharge—as though the

four-year limit were applicable only to landlords who overcharge by mistake. In fact, the statute contains its own remedy for wilful overcharges: treble damages (RSL § 26-516 [a]). It does not make the four-year limitation inapplicable in wilful overcharge cases—cases which, as the Legislature certainly knew, are a large number of the cases to which the limitation on its face applies.

The majority seemingly tries to temper its holding by saying that "an increase in the rent alone will not be sufficient to establish a 'colorable claim of fraud' " and that "a mere allegation of fraud alone, without more, will not be sufficient to require DHCR to inquire further" (majority op at 367). But obviously it does not take much "more" than an allegation of fraud—there is practically nothing more in this case. The majority adds that what DHCR is supposed to "inquire" about is whether there was a "fraudulent scheme to destabilize the apartment" (id.). It does not say what it takes to prove such a "fraudulent scheme." Simply a wilful overcharge? A wilful overcharge coupled with the hope that the overcharge will eventually result in the apartment's escape from rent stabilization?

If the majority opinion does not simply nullify the four-year limit in every case where the overcharge was not a good faith error, it requires DHCR to undertake an inquiry that the majority leaves wholly undefined. And what if DHCR's inquiry shows that, though there was a wilful overcharge, there was no "fraudulent scheme"? Does this mean that, if the landlord has been charging an illegal rent for more than four years, it may continue to do so?

The majority opinion can be read to mean either that the four-year limitation has largely ceased to exist, or that any case to which the limit applies on its face must lead to a mini-litigation, in which DHCR tries to figure out whether the overcharge was "fraudulent" enough to escape the time limit. If the former, the majority has simply tossed aside the Legislature's command. If the latter, I do not envy DHCR its task.

Chief Judge LIPPMAN and Judges PIGOTT and JONES concur with Judge CIPARICK; Judge SMITH dissents in a separate opinion in which Judges GRAFFEO and READ concur.

Order affirmed, etc.