Hillside Place, LLC v Rahman (2024 NY Slip Op 24279)

[*1]

Hillside Place, LLC v Rahman

2024 NY Slip Op 24279

Decided on October 28, 2024

Civil Court Of The City Of New York, Queens County

Guthrie, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on October 28, 2024
Civil Court of the City of New York, Queens County

Hillside Place, LLC, Petitioner,

against
MD Mustafezur Rahman, NAZ ISLAM, JOHN DOE, JANE DOE, AL MAHEDI MASHUD, Respondents.

Index No. L&T 61972/19

Jillian N. Bittner, Esq.
Horing Welikson Rosen & Digrugilliers, PC
Williston Park, NY
(Of Counsel to Green & Cohen, PC, New York, NY)
Attorneys for petitioner
Kenneth Schaeffer, Esq.
The Legal Aid Society
Kew Gardens, NY 11415
Attorneys for respondents MD Mustafezur Rahman and Naz Islam

Clinton J. Guthrie, J.

The decision and order after trial upon stipulated facts is as follows.
PROCEDURAL HISTORY
This holdover proceeding based on an alleged failure to renew a rent-stabilized lease was commenced in early June 2019. A motion for summary judgment on behalf of respondents MD Mustafezur Rahman and Naz Islam (hereinafter "respondents") was denied by Judge Sergio Jimenez by Decision/Order dated September 2, 2020. In February 2021, respondent Islam filed a COVID-19 hardship declaration, which stayed the proceeding pursuant to L 2020, ch 381 and L 2021, ch 417 (COVID-19 Emergency Eviction and Foreclosure Prevention Act). After the case was transferred to this trial Part, this court denied petitioner's motion for use and occupancy by Decision/Order dated June 5, 2023. By stipulation dated January 9, 2024, the parties stipulated to petitioner's prima facie case and to certain exhibits being admitted into evidence. The stipulation provided that "the sole issue is, what is the current lawful rent." Following the submission of post-trial memoranda, the court reserved decision after trial on February 29, 2024.
STIPULATED EVIDENCE
The parties' January 9, 2024 stipulation included consent to petitioner's prima facie case and exhibits. Included amongst the prima facie exhibits are the certified deed for the subject building, the certified multiple dwelling registration (MDR), the certified DHCR registration apartment information for the subject premises ("Apartment 06C"), respondents' vacancy lease (dated April 26, 2013), the most recent signed renewal lease for the subject premises (dated January 24, 2017 and amended July 10, 2017), the unsigned renewal that is the subject of this proceeding (dated December 17, 2018), a rent ledger, the petition for this proceeding, a DHCR Major Capital Improvement (MCI) order (dated March 30, 2017), past leases for the subject premises, and pleadings and orders from prior cases between the parties. Respondents' sole exhibit in evidence was comprised of copies of the DHCR registration apartment information for both "Apartment 6C" and "Apartment 06C" at 87-50 167th Street, Jamaica, New York 11432.
DISCUSSION/CONCLUSION
Petitioner's cause of action is predicated on a "Notice Terminating Tenancy" dated May 6, 2019, which asserts that respondents refused to renew an expiring lease at the legal regulated rent authorized under the Rent Stabilization Code (RSC) and Rent Stabilization Law (RSL) (citing, inter alia, RSC § 2524.3(f) (9 NYCRR § 2524.3(f))). Petitioner asserts that the renewal lease dated December 17, 2018 was offered at the legal regulated rent increase allowed by law under the NYC Rent Guidelines Board (RGB) Order (#50) then in effect, and respondents failed to renew it within the time permitted under the law. In response, respondents raise a defense that the December 17, 2018 renewal offer was improper because the legal rent should be $725.00, the amount due under "most recent reliable" registration from 1999, citing RSL § 26-516(a).[FN1]
The parties stipulated to have the legality of the renewal offer decided by this court.
In a failure to renew holdover involving a rent-stabilized tenancy, it is petitioner's burden to prove that the renewal offer was based on a lawful rent amount (see Ink 967-969 Willoughby, LLC v. Cordero, 74 Misc 3d 128[A], 2022 NY Slip Op 50063[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022]). The Rent Stabilization Code provides that the renewal offer shall be "at the legal regulated rent permitted for such renewal lease and otherwise on the same terms and conditions as the expiring lease" (RSC § 2523.5(a) (9 NYCRR § 2523.5(a))). A renewal offer that includes a rent that exceeds the legal regulated rent justifies a tenant's refusal to sign the renewal lease (see Cordero, 2022 NY Slip Op 50063[U], *1-2; Lexford Props., L.P. v. Alter Realty Co., Inc., 31 Misc 3d 142[A], 2011 NY Slip Op 50859[U] [App Term, 1st Dept 2011]).
Petitioner refers to the DHCR registration apartment information for the subject premises, the DHCR MCI order dated March 30, 2017, and renewal leases to support the legal regulated rent included in the renewal offer at bar. Petitioner argues that it must only establish the rent from the "base date," which it claims is June 14, 2015, four years prior to the enactment of the Housing Stability and Tenant Protection Act (HSTPA) of 2019. Petitioner further asserts that the court cannot analyze the rental history prior to the base date because the Court of Appeals, in Regina Metro. Co., LLC v. Div. of Hous. & Community Renewal, 35 NY3d 332 [2020] (hereinafter Regina), held that the provisions contained in Part F of the HSTPA (which includes the amendment to RSL § 26-516(a) relied upon by respondents) cannot be applied retroactively.
In assessing petitioner's evidence from the claimed base date of June 14, 2015, there are [*2]two signed 2-year renewal leases covering the period from May 1, 2015 through April 30, 2019.[FN2]
These leases properly incorporate the RGB increases permitted under the orders then in effect. In addition, the MCI order dated March 30, 2017 includes an increase of $30.62 (for 2 rooms attributable to respondents' apartment). Finally, the renewal offer dated December 17, 2018 includes the legal rent under the prior lease, $2,982.36, as well as RBG-allowed increases (under Order #50) for 1-and-2-year lease terms. The renewal offer also includes preferential rents in the amount of $2,050.00 for a 1-year renewal and $1,999.00 for a 2-year renewal. As the prior preferential rent was $1,850.00, the increases to the preferential rents exceed the RBG-allowed percentages. However, prior to the enactment of RSL § 26-511(c)(14) as part of the HSTPA, there was no bar to modifying or revoking a preferential rent. As the renewal lease at issue herein did not arise "on or after" June 14, 2019, the increases to the preferential rent amounts do not render the renewal invalid (see West Side Marquis LLC v. Moret, 83 Misc 3d 18, 20 [App Term, 1st Dept 2024] [citing RSL § 26-511(c)(14)]). The court also notes that the DHCR registration in evidence confirms the $2,982.36 amount as the last legal registered rent prior to the renewal at issue here. Thus, petitioner established, as a prima facie matter, that the legal regulated rent and proposed increases in the renewal offer at bar complied with the Rent Stabilization Code. 
Respondents, in defense, do not challenge the rent increases since the base date. Rather, they attack what they refer to as "irregular increases" in the rent between 1999 and 2014, as reflected in the DHCR registration history.[FN3]
Respondents assert that they are not bound by the 4-year lookback rule incorporated in the former version RSL § 26-516(a) because they are disputing the legality of the rent, rather than pursuing a rent overcharge claim per se.[FN4]
Thus, respondents claim that they are entitled to avail themselves of the provisions contained in the HSTPA amendments, including to RSL 26-516(a), which provides in relevant part that "the legal regulated rent for purposes of determining an overcharge[] shall be the rent indicated in the most [*3]recent reliable annual registration statement . . . plus in each case any subsequent lawful increases and adjustments." After the enactment of the HSTPA and prior to the Court of Appeals' decision in Regina, courts determined that the amended RSL § 26-516(a) could be applied to pending cases and given retroactive effect (see Dugan v. London Terrace Gardens, L.P., 177 AD3d 1 [1st Dept 2019]; Feuntes v. Kwik Realty LLC, 178 AD3d 451 [1st Dept 2019]; 97-101 Realty, LLC v. Sanchez, 66 Misc 3d 30 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2019]). However, in April 2020, the Regina Court held that retroactive application of the Part F amendments contained in the HSTPA was unconstitutional (35 NY3d at 384-386). The Regina holding, which effectively reinstated the 4-year statute of limitations codified in the former version of CPLR § 213-a for challenges to pre-HSTPA overcharges, has been followed by the Appellate Divisions in the First and Second Departments (see Aras v. B-U Realty Corp., 221 AD3d 5 [1st Dept 2023]; Wise v. 1614 Madison Partners, LLC, 214 AD3d 550 [1st Dept 2023]; Gridley v. Turnbury Vil., LLC, 196 AD3d 95 [2d Dept 2021]). 
Under the holding in Regina and several appellate decisions that have followed in its wake, only the establishment of fraud and/or a fraudulent scheme to deregulate a premises is a sufficient basis to review the rental history beyond the 4-year-prior base date (see Regina, 35 NY3d at 355-356; Aras, 221 AD3d at 10-12; Gridley, 101-103). Solely in the context of challenges to deregulation (i.e., as to the rent-stabilization status) has an exception to the 4-year lookback rule been widely recognized (see Liggett v. Lew Realty LLC, 2024 NY Slip Op 03378, *3 [2024] ["[N]o statute of limitations bars plaintiff's claim that the apartment is subject to rent stabilization."]; Thurman v. Sullivan Props., L.P., 226 AD3d 453, 454 [1st Dept 2024]; Rosa v. Koscal 59, LLC, 162 AD3d 466, 466 [1st Dept 2018]; East West Renovating Co. v. NY State Div. of Hous. & Community Renewal, 16 AD3d 166, 167 [1st Dept 2005]).
Here, while respondents' attempt to dispute rent increases before the base date is not precisely within the context of an overcharge claim, the intended effect is the same: to contest the legality of the rent. In analogous circumstances, Judge Jack Stoller held in Bel-Air Leasing L.P. v. Berezovska, 71 Misc 3d 1228[A], 2021 NY Slip Op 51513[U], *3 [Civ Ct, Kings County 2021] as follows: "Whether Respondents seek overcharge damages or not, Respondents are clearly referring to the registration history of the subject premises pre-dating four years before the interposition of their answer to calculate the legality of the rent Petitioner has been registering, even if for putatively limited purposes. The law does not permit such a use of such dated registrations." Indeed, if respondents here were able to establish a lower legal rent upon the court's review of the prior rental history, any subsequent overcharge claim would be largely proven upon such a finding. The court does not find that it can sanction such an end-run around the holdings in Regina and its progeny.
The court notes that while Regina (at Footnote 7) and Appellate Division decisions such as Burrows v. 75-25 153rd St., LLC, 215 AD3d 105 [1st Dept 2023] endorsed the common law fraud standard for assessing whether review of the rental history beyond four years would be permitted, a statutory definition of fraud governing overcharge cases was recently adopted (see L 2023, ch 760, Part B, § 2(b), as amended by L 2024, ch 95, § 4).[FN5]
The statute requires the [*4]showing of a "colorable claim that an owner has engaged in a fraudulent scheme to deregulate a unit." (Id.). In determining whether a colorable claim has been made, the statute requires the assessment of "all of the relevant facts and all applicable statutory and regulatory law and all controlling authorities" and does not require the establishment of "all of the elements of common law fraud[.]" (Id.). Even in the absence of common law fraud, however, a "fraudulent scheme or strategy to evade the law must . . . be discernible" for a colorable claim to be made under the new statute. (41-47 Nick LLC v. Odumosu, 2024 NY Slip Op 24167, *9 [Civ Ct, Kings County 2024]). 
Based upon the evidence presented by respondents, which solely consists of DHCR registrations going back to 1984, the court does not find that they have adequately demonstrated a "colorable claim" of fraudulent deregulation to warrant review of the rental history beyond the base date. As the Court of Appeals held in Regina, "use of a potentially inflated base date rent, flowing from an overcharge predating the limitations and lookback period, was proper in the absence of fraud." (35 NY3d at 360). In Matter of Grimm v. State of NY Div. of Hous. & Community Renewal, 15 NY3d 358, 366 [2010], the Court of Appeals held that "substantial indicia of fraud" must be shown to warrant review of the rental history beyond the 4-year statute of limitations. While the registrations relied upon by respondents include some possibly unexplained increases prior to the base date, they are not facially sufficient to raise a colorable claim of a fraudulent scheme to deregulate that would warrant review of the rental history as far back as 1999 (see Matter of Boyd v. NY State Div. of Hous. & Community Renewal, 23 NY3d 999, 1000-1001; Gridley, 196 AD3d at 102 ["An increase in rent alone is insufficient to establish a colorable claim of fraud."] [citing Matter of Grimm, 15 NY3d at 367]).
Accordingly, respondents have not demonstrated that the renewal offer made here contained an improper legal regulated rent or illegal proposed increases. As respondents have not refuted petitioner's prima facie case, petitioner is entitled to a final judgment of possession against MD Mustafezur Rahman and Naz Islam. The issuance of the warrant shall be stayed 30 days from the date that this Decision/Order is filed to NYSCEF to permit cure by executing the renewal lease dated December 17, 2018 and returning the signed lease to petitioner, pursuant to RPAPL § 753(4) (see Fairbanks Gardens Co. v. Gandhi, 244 AD2d 315 [2d Dept 1997]; Barmat Realty Co., LLC v. Quow, 39 Misc 3d 151[A], 2013 NY Slip Op 50977[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]). If respondents timely cure pursuant to this Decision/Order, the warrant shall be permanently stayed (see Quow, 2013 NY Slip Op 50977[U], *2). Execution of the warrant shall be stayed through December 31, 2024. The earliest execution date (EED) shall be January 2, 2025.
Petitioner is not entitled to a monetary judgment for use and occupancy. Petitioner did not seek to amend the petition, so only its claim for June 2019 use and occupancy can be considered by the court (see M. H. Thomasmith Co. v. Nicola Design Studio, Inc., 83 Misc 3d 135[A], 2024 NY Slip Op 51193[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2024]). Petitioner's rent ledger in evidence shows that a payment in June 2019 covered the June 2019 use and occupancy of $1,850.00 and left a balance carrying over into July 2019. Thus, the petition was satisfied as to the claim for use and occupancy due thereunder. Petitioner reserves its claims to post-petition use and occupancy.
As to the non-appearing respondents (John Doe, Jane Doe, and Al Mahedi Mashud), petitioner shall be entitled to a default judgment and issuance of a warrant; provided, however, that issuance of the default judgment shall be subject to filing non-military affidavits for the non-appearing respondents (see Avgush v. De La Cruz, 30 Misc 3d 133[A], 2011 NY Slip Op 50076[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2011]; see also Unitrin Advantage Ins. Co. v. 21st Century Pharmacy, 158 AD3d 450, 451 [1st Dept 2018]). Issuance and execution of the warrant against the defaulting respondents shall be on the same terms as against MD Mustafezur Rahman and Naz Islam. The EED shall be January 2, 2025.
This Decision/Order will be filed to NYSCEF.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
Dated: October 28, 2024
Queens, New York
HON. CLINTON J. GUTHRIE
J.H.C.

Footnotes

Footnote 1:The legal rent stated in the renewal offer dated December 17, 2018 was $2,982.36.

Footnote 2:RSC 2526.7(a) (9 NYCRR § 2526.7(a)) sets a default base date of June 14, 2015 if no base date can be determined subsequent thereto. Here, respondents interposed a defense challenging the renewal amount on or about August 6, 2019, which would create a base date 4 years prior. Nonetheless, since the same renewal lease was in effect on June 14, 2015 and August 6, 2015, the base date rent is the same for either date.

Footnote 3:These include the following increases: from $725.00 in 1999 to $929.00 in 2000; from $1,004.81 in 2002 to $1,090.35 in 2003; from $1,090.35 to $1,199.90 in 2004; from $1,100.00 in 2005 to $1,275.81 in 2006; from $1,275.81 in 2006 to $1,927.62 in 2007; and from $2,232.84 in 2013 to $2,861.41 in 2014. The court notes that vacancies are indicated on the DHCR registrations in 2000, 2007, and 2013. 

Footnote 4:The amendments incorporated in the Rent Regulation Reform Act of 1997 (L 1997, ch 116), "clarified and reinforced the four-year statute of limitations applicable to rent overcharge claims (see Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-516[a]) by limiting examination of the rental history of housing accommodations prior to the four-year period preceding the filing of an overcharge complaint." (Thornton v. Baron, 5 NY3d 175, 180 [2005]).

Footnote 5:While petitioner alludes to the potential unconstitutionality of the statute in its post-trial memorandum, it has not served the New York State Attorney General, so the court will not assess the constitutional challenge (see Ben Ami v. Ronen, 79 Misc 3d 14, 17 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2023] [citing CPLR § 1012(b)(3)]).