Burrows v 75-25 153rd St., LLC (2025 NY Slip Op 01669)

Burrows v 75-25 153rd St., LLC

2025 NY Slip Op 01669

Decided on March 20, 2025

Court of Appeals

Garcia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 20, 2025

No. 16 

[*1]Brian Burrows, et al., Appellants,
v
75-25 153rd Street, LLC, Respondent.

Roger A. Sachar, for appellants.
Deborah Riegel, for respondent. 
Daniel S. Magy, for amicus curiae, Hon. Letitia James, New York State Attorney General. 
The Legal Aid Society, New York Apartment Association et al., Tenant Voices et al., amici curiae.

GARCIA, J.

In this rent overcharge action, plaintiffs allege that defendant engaged in a fraudulent scheme that resulted in unlawfully inflated rents. The issue here is whether, to invoke the fraud exception, which permits a tenant to bring overcharge claims arising from a landlord's conduct outside the four-year statute of limitations and rental history "lookback" period, a plaintiff must show reasonable reliance on the landlord's alleged deceptive acts. We now clarify that, for the fraud exception to apply, a plaintiff need not demonstrate each element of common-law fraud, including reliance. To withstand a motion to dismiss, a complaint must instead, consistent with our precedent, allege sufficient indicia of fraud.
Plaintiffs are tenants of a building in Queens that participates in the Real Property Tax Law § 421-a program, which grants tax benefits to owners in exchange for making all units in the building subject to the rent stabilization laws and imposes additional regulatory requirements on owners. In 2020, plaintiffs commenced this rent overcharge putative class action against defendant, alleging a fraudulent scheme pursuant to which the building's previous owner registered a preferential rent as well as a higher legal regulated rent as the units' initial legal regulated rent, and by doing so was able to calculate increases far greater than legally permissible, in violation of Rent Stabilization Law of 1969 (RSL) (Administrative Code of City of NY) § 26-517 (a) (4) and Rent Stabilization Code (RSC) (9 NYCRR) § [*2]2521.1 (g). This scheme, according to plaintiffs' complaint, lasted for many years and affected hundreds of tenants. Furthermore, plaintiffs allege that defendant later sought to conceal this conduct by registering a legal regulated rent that matched the preferential rent, making the correct rent unknowable without discovery.
Defendant moved to dismiss, in part based on the expiration of RSL § 26-516 (a)'s four-year statute of limitations because the initial rent was registered in 2007, 13 years before the complaint was filed. Defendant argued that plaintiffs were not entitled to application of the fraud exception because they could not demonstrate reasonable reliance on the improper filing of the initial legally regulated rent and the preferential rent, as both numbers were shown in the units' registration history and in plaintiffs' leases. Supreme Court denied the motion, holding that plaintiff had alleged "sufficient indicia of fraud" to invoke the fraud exception (2021 NY Slip Op 32360[U], *3 [Sup Ct, NY County 2021]). Supreme Court denied reargument, again explaining that plaintiffs had alleged "sufficient indicia of fraud" and "do not need to demonstrate fraud conclusively to survive a motion to dismiss" (2021 NY Slip Op 33356[U], *4 [Sup Ct, NY County 2022]).
The Appellate Division reversed and granted defendants' motion to dismiss solely because "neither plaintiffs nor any of their predecessors could have reasonably relied on the inflated 'legal regulated rent' figures that appeared on the face of the registration statements" and in each tenant's lease and "since plaintiffs' claims are based upon inflated figures for legal regulated rents that were registered far more than four years before the commencement of this action in 2020, their claims are time-barred" (215 AD3d 105, 112-113 [1st Dept 2023]). That Court, relying on a footnote in Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d 332, 356 n 7 [2020]), held that "reasonable reliance is an element of fraud for purposes of evading the four-year lookback restriction for pre-HSTPA overcharge claims," and so "the undisputed disclosure in the publicly available rental histories of the discrepant figures for legal regulated rent and preferential rent negates any inference of fraud as a matter of law" (id. at 113 [internal quotation marks and citation omitted]). We granted leave to appeal (see 41 NY3d 906 [2024]), and now modify the Appellate Division order. Reasonable reliance by a tenant on an owner's fraudulent representation of a regulated unit's rent or status is not required for the fraud exception to apply in a rent overcharge action.
Twenty years ago, this Court recognized an exception to the four-year lookback period provided in RSL § 26-516 (a). In Thornton v Baron, tenants, who "conspired with the owner to circumvent rent stabilization," brought a rent overcharge claim seven years after the filing of the rent registration (5 NY3d 175, 178 [2005]). In addressing whether the lower courts properly determined the legal regulated rent, this Court held that "an attempt to circumvent the Rent Stabilization Law" is a "violation of the public policy of New York," and permitted the use of the default formula in fixing the base date rent (id. at 181; see RSC § 2522.6). The Court reached this holding "although the subtenants who brought the overcharge complaint themselves had unclean hands" because "the principle we establish here will apply equally to innocent renters" (id.). Thornton's rule was not intended, as the dissent characterized it, to benefit "one wrongdoer . . . at the expense of another," but rather to ensure that "no wrongdoer may benefit at the expense of the public" (id. at 182). While acknowledging that "the Rent Regulation Reform Act of 1997 . . . clarified and reinforced the four-year statute of limitations applicable to rent overcharge claims . . . by limiting examination of the rental history of housing accommodations prior to the four-year period preceding the filing of an overcharge complaint," the Court explained that the legislation's purpose was "to alleviate the burden on honest landlords to retain rent records indefinitely . . . , [but] not to immunize dishonest ones from compliance with the law" (id. at 181). Otherwise, "a landlord whose fraud remains undetected for four years—however willful or egregious the violation—would, simply by virtue of having filed a registration statement, transform an illegal rent into a lawful assessment that would form the basis for all future rent increases" (id.). Application of the fraud exception under the appropriate circumstances prevents that outcome.
Five years later, in reviewing a CPLR article 78 petition challenging a Division of Housing and Community Renewal (DHCR) determination denying an overcharge claim, this Court applied the exception and explained its applicability "where the overcharge complaint alleges fraud" (Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358, 366 [2010]). While cautioning that "an increase in the rent alone will not be sufficient to establish a 'colorable claim of fraud,' " the Court held that the four-year lookback period may be disregarded where "there existed substantial indicia of fraud on the record" (id. at 366-367). We explained that the limited lookback period was intended to "effectuate the purpose of the four-year limitations period" but applied Thornton's exception to require DHCR to "ascertain whether the rent on the base date is a lawful rent" (id. at 366).
Again in 2015, we applied the fraud exception to the statute of limitations, although defendant's fraud was clear from publicly available documents, because plaintiffs "advance a colorable claim of fraud within the meaning of Grimm—i.e., tenants alleged substantial evidence pointing to the setting of an illegal rent in connection with a stratagem devised by [defendant] to remove tenants' apartment from the protection of rent stabilization" (Conason v Megan Holdings, LLC, 25 NY3d 1, 16 [2015]). There we explained that "Thornton and Grimm dictate the resolution of the parties' dispute about how the four-year statute of limitations" applies, and as a result held that the lower court had "properly considered tenants' counterclaim alleging rent overcharges notwithstanding expiration of the four-year statute of limitations" (id. at 12, 16). In other words, because there was "unrefuted proof of fraud in the record," the statute of limitations "merely limit[ed] tenants' recovery to those overcharges occurring during the four-year period immediately preceding [plaintiff's] rent challenge, and . . . the lawful rent on the base date must be determined using the default formula" (id. at 6).
The Court recently reaffirmed the fraud exception in Regina, explaining that there is a "limited common-law exception to the otherwise-categorical evidentiary bar" of the four-year lookback period and that it applies "only in the limited category of cases where the tenant produced evidence of a fraudulent scheme to deregulate and, even then, solely to ascertain whether fraud occurred—not to furnish evidence for calculation of the base date rent or permit recovery for years of overcharges barred by the statute of limitations" (35 NY3d at 354-355). Contrasting Thornton, Grimm, and Conason with the pleadings at issue in Regina—so called Roberts overcharge claims (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270 [2009]) involving the deregulation of units "not based on a fraudulent misstatement of fact but on a misinterpretation of the law"—the Court held that "the fraud exception to the lookback rule is generally inapplicable to Roberts overcharge claims" (id. at 356). A footnote to this discussion in Regina described the elements of common law fraud (id. at 356 n 7), and that footnote has been interpreted by some courts, including the Appellate Division below, to impose a requirement that tenants demonstrate all elements of a common law fraud cause of action to avail themselves of the fraud exception to the lookback rule (see e.g. 215 AD3d at 112-114; Aras v B-U Realty Corp., 221 AD3d 5, 11-12 [1st Dept 2023]; Gridley v Turnbury Vil., LLC, 196 AD3d 95, 101 [2d Dept 2021]). There is no such requirement.
The Regina footnote was intended only to highlight the difference between a standard Roberts claim, where deregulation was done in good faith, and those in which "tenants came forward with evidence of fraud" (Regina, 35 NY3d at 356). It was not meant to alter the showing required to invoke the fraud exception. Indeed, Regina reaffirms our traditional approach to the fraud exception, which does not include a requirement that tenants demonstrate reasonable reliance on owners' allegedly fraudulent conduct (here, registration of the initial legally regulated rent). As the cases the Court discussed in Regina made clear, even tenants with "unclean hands" may invoke the fraud exception to ascertain whether fraud occurred for purposes of showing entitlement to the default formula for calculating overcharges (35 NY3d at 355-356; Thornton, 5 NY3d at 181).
A reliance requirement would be misplaced; the fraud exception serves a far different purpose than an allegation of common law fraud. The fraud exception, applicable only to an overcharge claim, simply allows for review of the rental history outside the four-year lookback period and then, as discussed, "solely to ascertain whether fraud occurred—not to furnish evidence for calculation of the base date rent or permit recovery for years of overcharges barred by the statute of limitations" (Regina, 35 NY3d at 355). The exception operates to protect not only current tenants, who may or may not have relied on a fraudulent representation, but future tenants and the overall rent regulatory system. Requiring that a tenant show reliance on a landlord's fraudulent representation would exempt an "unscrupulous landlord in collusion with a tenant" from the consequences of engaging in a scheme to evade the law's protection (Thornton, 5 NY3d at 181). Given the narrow purpose and scope of the fraud exception, there is no basis for imposing the pleading requirements of a common law fraud claim. Instead, we require plaintiffs to put forth "sufficient indicia of fraud" or a "colorable claim" of a fraudulent scheme but do not impose a burden to establish each element of a common law fraud claim.
On a motion to dismiss, the complaint must be construed in the light most favorable to plaintiff and all factual allegations must be accepted as true; "[w]hether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]; see also 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151-152 [2002] ["Dismissal under CPLR 3211 [a] [1] is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law"] [internal quotation marks and citation omitted]). As Supreme Court noted here, a plaintiff need not "demonstrate fraud conclusively to survive a motion to dismiss" (2021 NY Slip Op 33356[U], *4), and we hold [*3]today that reasonable reliance is not a required element for the fraud exception to apply. But, as has long been required, to invoke the fraud exception, a plaintiff must allege sufficient indicia of fraud, or a colorable claim of a fraudulent scheme to evade the protections of the rent stabilization laws, to withstand a motion to dismiss on statute of limitations grounds. Such allegations must include more than an assertion that a tenant was overcharged—a mere allegation of a high rent increase is insufficient for the fraud exception to apply (see Matter of Boyd v New York State Div. of Hous. & Community Renewal, 23 NY3d 999 [2014]; Grimm, 15 NY3d at 367). We address only the reliance issue here. On remittal the Appellate Division should apply our established standard—assessing whether plaintiffs' complaint alleges sufficient indicia of fraud or a colorable claim of a fraudulent scheme "to remove tenants' apartment from the protections of rent stabilization" (Conason, 25 NY3d at 16)—in considering whether the fraud exception applies.[FN1]
The Appellate Division properly granted defendant's motion to dismiss with respect to one plaintiff's overcharge claim based on a two-month rent concession, holding that, as to that claim, the complaint was "legally insufficient" (215 AD3d at 115). Defendant's documentary evidence submitted with its motion to dismiss refutes plaintiffs' allegations that defendant improperly revoked a preferential rent upon plaintiff's lease renewal because, pursuant to agency guidance applicable at the time, plaintiff's rent concession was not a prorated concession but instead a limited concession for a specified period. That portion of the Appellate Division order is therefore affirmed.
Accordingly, the judgment appealed from and so much of the Appellate Division order brought up for review should be modified, without costs, by remitting to the Appellate Division for further proceedings in accordance with this opinion and, as so modified, affirmed.
Judgment appealed from and so much of the Appellate Division order brought up for review modified, without costs, by remitting the case to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.
Decided March 20, 2025

Footnotes

Footnote 1: Plaintiffs argue that "clarifying" legislation signed into law in 2024 provides an independent basis for reversal because it specifies that "there need not be a finding that all of the elements of common law fraud, including evidence of a misrepresentation of material fact, falsity, scienter, reliance and injury, were satisfied in order to make a determination that a fraudulent scheme to deregulate a unit was committed if the totality of the circumstances nonetheless indicate that such fraudulent scheme to deregulate a unit was committed" (L 2024, ch 95, § 4). Given our holding that a showing on each element of common-law fraud is not a requirement for invocation of the fraud exception, we need not address to what extent this legislation differs from our common law rule, and, if there is any difference, the impact or applicability of that legislation.